Stephenson, J.
 

 What could have been the purpose of this line of cross-examination of Murray? Murray was not inquired of concerning these other companies in his examination in chief, and, had plaintiff in error’s counsel attempted it, it would have been incompetent.
 

 It would have been just as competent for plaintiff in error, as reflecting upon the improbability of his guilt, to have called witnesses to prove that he was connected with other concerns for which receivers were not appointed.
 

 Counsel for the state insist that this testimony was highly significant; that by such testimony he was attempting to show that plaintiff in error in fact owned the Edwinlee Realty Company. We see no connection in the records between these companies, or any relations had by these companies with the Edwinlee Company except the Edwards Land Company or the Edwards, Smith Garvin Company. (Both names are used and the court cannot say whether they are one and the same company or not.)
 

 It is further sought to justify this cross-examination of Murray and plaintiff in error on the ground that a suit was brought against several companies in which plaintiff in error was an officer, and in which suit the Edwinlee Realty Company was restrained from disposing of any of its assets or property.
 

 We think this is rather far-fetched. What was the purpose of showing the amount of fees plaintiff in
 
 *147
 
 error was paid by the Taylor family, and the manner in which they were drawn, and a narration of the services he had performed in order to earn them? On what issue in the case did this testimony reflect? Why the argument of propositions of law with plaintiff in error on cross-examination? Note the question at page 356 of the record: “Now, will you answer this: In what way could the Taylor family ever prove that that was their property unless you were being on trial today?” Again, on page 358 of the record: “Now, if you chose, not to deliver this property to them it would be their testimony against yours?” On what issues in the case does this testimony bear?
 

 We are not unmindful that the law allows much latitude in cross-examination of the accused in criminal cases, but can counsel be permitted to pursue a course of cross-examination regardless of the relevancy and competency of the testimony, the natural tendency of which would be to prejudice the minds of the jury? The scope of legitimate cross-examination was defined in Ohio in the old case of
 
 Legg
 
 v. Drake, 1 Ohio St., 286. We quote paragraphs four and five of the syllabus:
 

 “Wlien a witness is produced and examined by a party in an action, even though he be interested to testify against the party calling him, the other party is not limited, in his cross-examination, to the subject matter of the examination in chief, but may cross-examine him as to all matters pertinent to the issue on the trial; limited, however, by the rule, that a party cannot, before the time of opening his own case, introduce his distinct grounds of defense or avoidance, by the cross-examination of his adversary’s witnesses.
 

 “When the cross-examination is extended fo topics disconnected with the particular facts disclosed in the direct examination, leading questions to the witness may be proper or improper, according to circumstances, and the control of this must rest within the discretion of the court.”
 

 
 *148
 
 This has been the rule governing cross-examination in Ohio for more than three-quarters of a century. This court is not departing from that rule in the slightest degree, but we do abbreviate, simplify and extend the rule, as follows:
 

 “A witness may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts into which the party calling such witness could have inquired in order to make out his case.
 

 “If the cross-examiner goes beyond this scope, he makes the witness his own, is bound by his testimony, and as to such matter subjects the witness to cross-examination by the party calling him.”
 

 When this rule is exceeded in the cross-examination of an accused person, the effect is to compel the accused to be a witness against himself, in contravention of his constitutional rights.
 

 Was the testimony, or any part of it, complained of by plaintiff in error, prejudicial to the extent that he was denied a fair and impartial trial? If not, no harm was done. We cannot read the minds of the jurors; we can only reason from common probabilities. When the jurors take the box in a criminal case, they are interrogated at length as to whether or not they have any bias or prejudice in the case. If their minds are free, open and unbiased, they are sworn to “well and truly try and true deliverance make between the State of Ohio and the prisoner at the bar.” Amplifying upon this oath, it means that the jury will determine the case upon the testimony adduced from the witness stand and the law given them by the court. The law implies that the jury’s verdict be based upon competent relevant testimony. It then becomes the duty' of court and counsel to see that the jury is not permitted even to hear, let alone consider, irrelevant incompetent testimony. Some irrelevant incompetent testimony is harmless, but much is harmful in that it ere
 
 *149
 
 ates in the minds of the jurors a prejudice against the accused, thereby denying to him his right to a fair impartial trial.
 

 Plaintiff in error should not have been inquired of, under this theory, as to the fees he received from the Taylor family, when they were earned, and how he earned them.
 

 It was not the theory of the state that he was agent of the Taylor family in these alleged embezzlements.
 

 The questions of law, heretofore referred to, that were propounded to defendant on cross-examination, were certainly not germane. True, plaintiff in error was a lawyer, but how could the legal effect of certain circumstances be of any help to the jury? It was not concerned with questions of law.
 

 Exceptions were not saved to each and every question complained of, but suffice it to say that enough were saved to require this court to determine whether or not plaintiff in error had a fair and impartial trial.
 

 The general rule established in the case of
 
 Legg
 
 v.
 
 Drake, supra,
 
 was supplemented in the case of
 
 Wroe
 
 v.
 
 State,
 
 20 Ohio St., 460, as follows:
 

 “The limits to which a witness may be cross-examined on matters not relevant to the issue, for the purpose of judging of his character and credit from his own voluntary admissions, rests in the sound discretion of the court trying the cause. Such questions may be allowed when there is reason to believe it will tend to the ends of justice; but they ought to be excluded when a disparaging course of examination seems unjust to the witness, and uncalled for by the circumstances of the case.”
 

 The answers in this case were not voluntary. They were objected to in almost every instance, but the witness was required to answer. We fail to see wherein the circumstances in the case before us called for this line of cross-examination, and just why it was persisted in.
 

 
 *150
 
 The jury must have been impressed, to some extent at least, with the thought that if plaintiff in error was connected with so many concerns for which receivers were appointed he was probably the kind of man who would embezzle moneys. Just what effect the testimony as to the fees received from the Taylor family, how, when and where they were earned, and the questions of law, had on the jury, we are unable to say; but we think we are safe in saying that when this testimony was considered in connection with the testimony relative to the receiverships it did not redound to the benefit of plaintiff in error, but militated against him ; that his rights were prejudiced, and he did not have the fair and impartial trial contemplated by our Constitution.
 

 The judgments of the Court of Appeals and court of common pleas are reversed.
 

 Judgments reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.