**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v BURTON**

Ohio Appeals, 7th Dist, Trumbull Co

Decided Sept 9, 1935

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

Wilkins & Anderson, Warren, for defendant in error.

## OPINION

By NICHOLS, J.

This action was brought in the Common Pleas Court of Trumbull County, Ohio, by Josh H. Burton, plaintiff, against The Equitable Life Assurance Society of the United States, defendant, to recover disability benefits allegedly accruing to plaintiff on two policies of life insurance issued to him by the defendant.

The parties will be referred to herein as they were in the trial court wherein defendant in error Burton was plaintiff, and plaintiff in error assurance company, was defendant.

The plaintiff claimed to be disabled within the meaning of the language of the contracts of insurance, by reason of a duodenal ulcer. The language of the policies is as follows:

"If the assured before attaining the age of sixty provided all premiums have been duly paid and this policy is then in full force and effect, becomes physically or mentally incapacitated to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, and furnishes due proof thereof and that such disability has then existed for sixty days, the Society during the continuance of such disability, will waive payment of any premium payable upon this policy after receipt of such proof, and will pay to the insured an income of six hundred dollars a year payable in monthly installments, subject to the following conditions."

The defendant contended that plaintiff was not disabled within the meaning of these policies.

A large portion of the testimony in this case consisted of expert testimony given by various doctors and, to some extent, was based on hypothetical questions. It is with

reference to this testimony that all of the claimed errors arise. They are as follows:

"1. Defendant contends that the court erred in that he improperly limited the cross-examination of a doctor offered by the plaintiff, namely, Doctor John Heberding.

"2. That the court erred in failing to rule out entirely expert testimony of one of plaintiff's doctors, namely: Doctor Sydney McCurdy.

"3. That the court erred in his general charge to the jury when dealing with the subject of expert testimony."

We will take up these matters in the order above set forth.

(1.) Did the court err in improperly limiting the cross-examination of Dr. John Heberding, offered by plaintiff?

Doctor John Heberding testified, when called by the plaintiff, that he was a physician and surgeon and had been such since 1905; that he had four years preparation in medical college, one and one-half years internship in a hospital and then took special work in X-ray; that he had done some X-ray work since the latter part of 1906, and was exclusively engaged in X-ray work since 1918; that he was connected with the staff of the Youngstown City Hospital and St. Elizabeth's Hospital in Youngstown; that he had examined the plaintiff and taken X-ray pictures of his stomach and duodenum on June 7, 1934, having made two examinations and two sets of X-ray pictures on that date a few hours apart; that such examination consisted of a fluouroscopic examination and taking various X-ray pictures of the organs above mentioned after having given the plaintiff a barium meal; that the fluouroscopic examinations and the X-ray showed no evidence of any organic lesion of the stomach, but that the first portion of the duodenum showed some evidence of an ulcer, and quite a little spasm; and further that the examination disclosed to the doctor that a duodenum ulcer was present.

No hypothetical questions were asked of Doctor Heberding, counsel for plaintiff seemingly being content to limit his examination in chief to showing the above enumerated facts.

On cross-examination by counsel for the defendant, the following question was asked:

"Now you have seen Mr. Burton on two different occasions and I want to ask you, doctor, what is your candid opinion as to whether or not Mr. Burton was at either one of the times you saw him, permanently and totally disabled?"

Judge Wilkins: "I object."

The Court: "Objection sustained."

Mr. Wilkinson: "On what basis?"

Judge Wilkins: "The doctor has not been called on questions of clinic. He has been called on X-ray."

Mr. Wilkinson: "I know, but the doctor is called as a medical doctor and he has the right to express an opinion as to what he thinks about that."

The Court: "I think the objection is well taken. You may note an exception."

Mr. Wilkinson: "Note an exception."

Thereupon the following questions were asked of Dr. Heberding by defendant's counsel:

"Q. What school did you go to? A. Western Pennsylvania—now University of Pittsburgh.

"Q. Did you at any time receive a degree as a doctor of medicine? A. Yes, sir.

"Q. And you are familiar with the medical aspects of the make-up of the duodenum and you are familiar with the practice of medicine generally, aren't you? A. I would say that I am. Of course, when I graduated, they hardly recognized duodenal or gastric ulcer. There was no way of diagnosing, they were not diagnosing with X-ray yet, it wasn't possible. They just began that in later years.

"Q. You have probably an unusual medical background, haven't you? A. Well, I had a fairly good medical education. I would have liked to have had more.

"Now I am going to ask that question over again.

"Q. Now I will ask you whether or not from your examinations of Mr. Burton and from the X-ray pictures you have taken of him and from the fluoroscope examinations you have made of him, whether you are in a position to express an opinion about whether or not he is and was at those times totally and permanently disabled?"

Judge Wilkins: "I object to the question."

The Court: "For the same reason?"

Judge Wilkins: "Yes, for the same reason."

The Court: "Objection will be sustained."

Mr. Wilkinson: "Exception."

"Q. Doctor, what is your opinion as to whether or not Mr. Burton is at the present time totally and permanently disabled?"

Judge Wilkins: "Object."

The Court: "Sustained."

Mr. Wilkinson: "Exception."

The record discloses that the objection to these questions was sustained by the court on the ground claimed by counsel for plaintiff in error; that is, that Doctor Heberding had not been qualified as a medical expert generally, but had been qualified only in the particular branch of medicine known as X-ray. It is the claim of counsel for defendant that Doctor Heberding was qualified as a medical expert; that although plaintiff did not see fit to ask the witness for his expert opinion as to the effect upon plaintiff of the condition testified to by the doctor, yet the plaintiff might have asked for such opinion for the purpose of establishing plaintiff's case and that, therefore, the defendant, under the right of cross-examination, should have been permitted to have interrogated the witness upon any subject which the plaintiff might have interrogated him, and the defendant claims that the refusal of the court to permit such examination was error prejudicial to the defendant.

We take it that no statement of this court is necessary upon the subject of the great value of cross-examination in arriving at the truth. In arriving at our conclusion as to whether the court committed prejudicial error in the manner claimed by the defendant, we find that the Supreme Court of Ohio has very clearly laid down the rule governing cross-examination in Ohio, in the case of **Smith v State, 125 Oh St, 137, 180 NE, 695.**

The rule laid down by the Supreme Court in Smith v State, supra, is as follows:

"A witness * * * may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts as the party calling such witness could have inquired in order to make out his case. If the cross-examiner goes beyond this scope, he makes the witness his own, is bound by his testimony, and as to such matter subjects the witness to cross-examination by the party calling him."

In the light of the rule thus laid down by the Supreme Court of Ohio in this most recent case it seems apparent that plaintiff might properly have developed by the examination of Doctor Heberding in chief the expert opinion of this doctor as to whether or not from his own examination and his own X-ray pictures of the plaintiff that such

plaintiff was disabled in the manner and to the extent provided in the policies of insurance which were the subject of this action, and that upon the failure of the plaintiff to examine the witness in chief, as above indicated, it was the right of the defendant to cross-examine the witness as to all relevant facts into which the party calling him could have inquired in order to make out his case.

Were the questions propounded by counsel for the defendant on cross-examination, to the witness, Doctor Heberding, such as might have been propounded by plaintiff in chief? We think not.

In arriving at our conclusion that the court committed no error in sustaining the objection to these questions, we call attention to the provisions of the policies of insurance which set forth the conditions upon which plaintiff below was entitled to recover in this case, which are quoted, as follows:

"If the assured * * * becomes physically or mentally incapacitated to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, * * * the Society * * * will waive payment of any premium payable upon this policy * * * and will pay to the insured * * *."

Therefore, the issue to be determined in this case was whether or not the plaintiff had become physically or mentally incapacitated to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value. The questions propounded to Doctor Heberding upon cross-examination were not relevant to the issue to be determined. Let us suppose that the court had permitted answers to the particular questions propounded on cross-examination to the witness, Doctor Heberding, and Doctor Heberding had answered "no" to each of these questions. Clearly, this testimony would have been misleading to the jury in that the jury might have been led to believe by such answer that the plaintiff was not entitled to recover since Doctor Heberding did not believe plaintiff to be permanently and totally disabled whereas. it was only necessary for the jury to find that plaintiff was wholly and presumably permanently disabled to the extent that

plaintiff was unable to engage in any occupation or perform any work for compensation of financial value. In other words, the plaintiff was entitled to recover if he was wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, although plaintiff might not be wholly and permanently disabled. One may not be wholly and permanently disabled and yet may be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value. If defendant's questions upon cross-examination had been so framed as to determine the issue in question and not be misleading to the jury we would hold that such questions were competent, but being not so framed and being misleading to the jury in the form in which they were asked, we find and hold that there was no prejudicial error committed by the court in sustaining the objections thereto. In this case let us assume that the answer of Doctor Heberding, to the questions propounded, had been "yes". Certainly such an answer would have been prejudicial to the defendant and, therefore, the refusal to permit such answer could not be prejudicial. Such an affirmative answer to the questions propounded would have tended to prove more than the plaintiff was required to show in order to make out his case. It seems thus plain that a person may be presumably permanently disabled from performing any work for compensation of financial value and yet may not be permanently and totally disabled. A presumption of permanent disability may arise although a person may not, in fact, be permanently disabled. The very terms of the policy leave open to the defendant the right to require plaintiff to submit proof, at least once each year, that the disability which is presumed to be permanent still exists. To take away the provision of presumptive disability would be to deprive the plaintiff of a substantial right to which he is entitled under the terms of the insurance contract and would be to require the plaintiff to make proof of disability beyond possibility of restoration before being entitled to the benefits of the policy. This was not the intention of the parties to the contract, as shown by the plain language used in these policies.

(2.) Did the court err in failing to rule out entirely the expert testimony of Dr. Sidney McCurdy, one of plaintiff's witnesses?

An examination of the record discloses that Doctor McCurdy testified as an expert medical man on behalf of the plaintiff, substantially, as follows.

That he was a practicing physician and surgeon in the city of Youngstown for approximately thirty years; that he graduated from Western Reserve University and interned in Youngstown Hospital; that he engaged for ten years in the general practice and for eighteen years as chief surgeon for The Youngstown Sheet & Tube Company; that he left the service of that company and for the last year again engaged in the general practice; that he examined the plaintiff on two different occasions, once on July 13, 1934, and again on December 15, 1934; that in his opinion the plaintiff had a duodenal ulcer and arthritis in his spine, sacro-iliac joint and right hip; that the arthritis is accompanied by pain and that the plaintiff complained of great pain during the examination; that his second examination disclosed the same things found on the first examination, namely, a duodenal ulcer and arthritis of the spine, sacro-iliac and hip.

On cross-examination the doctor testified, in substance, that the plaintiff had told him his troubles; that he was suffering from a duodenal ulcer; that at the time of making the examination the doctor had before him the X-ray reports and that he made a complete physical examination.

The doctor was then asked, upon cross-examination, the following questions:

"Q. And from all of those things that I have just gone over with you, you came to the conclusion that he had a duodenal ulcer, didn't you? A. That was our diagnosis."

"Q. And I suppose that diagnosis, your conclusion in arriving at that, you took into consideration the history that he gave you, and you took into consideration the X-ray reports and you took into consideration your physical examination and what you found out at that time? A. I did.

"Q. And those three things are the things that you based whatever opinion you expressed in this case on? A. That's it

"Q. You mean that is right? A. Yes."

It is noted that up to this point in the direct and cross-examination of Dr. McCurdy, no objections were made by counsel for the defendant to the questions asked, nor were any motions made to strike the answers given.

On re-direct examination the doctor was asked if there were any X-rays of the back,

to which he answered there were none; that he noticed some rigidity over the abdominal region, and that he would expect such a condition if an ulcer were present.

On re-cross-examination the doctor was asked this question:

"Q. Now when you expressed an opinion here as to the existence of this arthritis you came to that conclusion or those conclusions as a result of the history you got from the man and the result of the pictures, of the X-ray doctor, and from your findings at the time of your physical examination. A. Yes, sir."

We note that still no objection had been made to the testimony of Dr. McCurdy.

On further re-direct examination Dr. McCurdy was asked whether or not any pictures had been taken of the back or shoulder, to which the doctor answered "no", and that from his own examination, aside from the history, he believed that there was an arthritis condition present.

On re-cross-examination the doctor was asked this question:

"Q. You found, in your opinion, he had arthritis, and in arriving at that conclusion, I want to know if you didn't arrive at it on the fact that when you examined him that he complained of pain whenever you attempted to manipulate the parts you did and the history he gave you in connection with it? A. I did."

Following all of the doctor's testimony, before any other witnesses were called by the plaintiff, defendant's counsel made a motion, as follows:

"I now ask the court to strike from the record all of the opinions given by Doctor McCurdy in this case on the ground that his conclusion was based on the history given by Mr. Burton and was also based on the X-ray reports in so far as the duodenum is concerned, one of which is hearsay, and the other a self-serving declaration. I not only ask that it be stricken from the record, but the jury be instructed to disregard it."

The Court: "Motion overruled."

Mr. Wilkinson: "Exception."

The trial proceeded and several other witnesses were examined and, on the day following that upon which Doctor McCurdy's testimony was given, the court gave to the jury the following instruction:

"Members of the jury, at the conclusion of Dr. McCurdy's testimony, counsel for the defendant made a motion that the court instruct the jury to disregard certain opinions expressed by Dr. McCurdy. The court overruled the motion for the reason that the motion was directed to all of the opinions expressed by Dr. McCurdy. However, the court feels that you should be instructed that you are to disregard any opinions given by Dr. McCurdy which opinions were based upon anything through any source of opinion other than his own examination of the patient. That is, if those opinions that he has expressed were based upon any statement made to him by the plaintiff, the man he was examining, should be disregarded by the jury. And any opinion expressed that was based in part or in whole upon any report or any statement that he had received from the X-ray man or from anyone else that opinion should be disregarded by the jury. Any opinion that he expressed that was based wholly or in part upon statements that were made to him by the man he was examining and any opinion based in whole or in part upon any opinion or any report given to him by the X-ray man should be totally disregarded by the jury. This instruction does not go to those opinions expressed by the doctor that were based solely upon his examination of the plaintiff."

Mr. Wilkinson: "I am calling the court's attention to the fact that I asked the doctor if each of the opinions he expressed were not based on three things, which were the X-ray, the report, what the man told him and to his own examination and he said yes. I think all the opinions he expressed were based on those."

The Court: "That will be a matter for the jury. The instruction is plain. The jury understands that if his opinion was based upon these other matters, the statements of the claimant or the statement of any third person, or the statement of the X-ray man, if that is the opinion on which the doctor based his opinion and the jury finds that to be, then you are to disregard absolutely such opinion the same as if it had never been expressed and you had never heard it. Disabuse your mind of it absolutely."

It will be noted that nowhere in the testimony of Doctor McCurdy does it appear whether or not he was a treating physician to the plaintiff, or whether or not the doctor was testifying only as an expert. It is plain that at any time during the examination

in chief of Dr. McCurdy the defendant might have asked for the privilege of cross-examination for the purpose of ascertaining whether he was testifying as a treating physician or as an expert, and thereupon appropriate and timely objection could have been made if such cross-examination had developed that the doctor was testifying merely as an expert.

It is conceded in the brief filed by defendant that upon at least one occasion the doctor testified "that from his own examination aside from the history" he believed there was an arthritis condition present. The motion to strike out all of Dr. McCurdy's testimony was properly overruled. Several pages of his testimony having been given before any motion to strike was interposed and it appearing that certain of this testimony was competent even though the doctor were testifying as an expert, it was not proper for the court to strike the whole of Dr. McCurdy's testimony from the consideration of the jury, and we think that the instructions of the court to the jury, as above quoted, properly and explicitly gave the jury to understand that they were to take into consideration, in arriving at their verdict, only those opinions expressed by the doctor that were based solely upon his examination of the plaintiff.

It is noted that in his general charge to the jury the following instruction was given by the court:

"You must disregard any opinion regarding the condition of the plaintiff expressed by any medical expert not a regular attending physician of the plaintiff, if you find that such opinion was based in any substantial degree on statements made by the plaintiff or any third person to such medical expert."

This instruction clearly left to the jury the determination as to whether Doctor McCurdy was a regular attending physician or merely an expert and if an expert only that none of his opinions were to be considered by the jury, except such as were based upon his own examination of the plaintiff, and not upon matters which were hearsay or declarations which were self serving. We can find no prejudicial error in the court's failing to rule out entirely the testimony of Doctor McCurdy.

(3.) Did the court err in his general charge to the jury when dealing with the subject of expert testimony?

As shown by the record, the court stated in substance to the jury that both the plaintiff and the defendant had called medical experts for the purpose of enlightening the jury concerning the condition of plaintiff. The court further explained that these witnesses had given their opinion in answer to questions embodying a statement of facts and the court instructed the jury that the weight to be given to such opinion depended on the skill and experience of the doctor and whether or not the statement of facts upon which the opinion was based was true as disclosed by the evidence. The court then used the following language in his charge:

"If the question of this statement of facts put to the witness upon which he expressed his opinion does not embody facts as you found them to be established by the testimony, then the opinion is of little or no value in determining the issues in this case. If, however, the questions embodied substantiate the facts as you found them to exist from the testimony, then you should give to them such weight as in your judgment under the testimony in the case they would be entitled to, in determining this question."

There was no error in this quoted statement of the court to the jury. This language simply told the jury that if they found certain questions put to the expert witness did not embody all the facts as they found them to be established by the testimony, but were based only upon a part of the facts which the jury may have found established by the testimony, then the opinion might be of little or no value in determining the issues in this case. Not all of the facts established by the testimony need be incorporated in any single question propounded to the expert and it was for the jury to determine whether such opinion was based substantially upon the facts established by the testimony. In determining this proposition we note that counsel for plaintiff propounded no hypothetical questions and that the only hypothetical questions asked were by counsel for the defendant and we conclude that in no event could the instruction given by the court to the jury upon this subject have been prejudicial to the defendant.

We have carefully considered all of the errors assigned by counsel for defendant, both in his brief and in oral argument, and have found no prejudicial error there-

in, and that substantial justice has been done.

The judgment of the trial court is, therefore, affirmed.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.