Appellant William H. Taylor, II, appeals from his conviction in the Medina County Court of Common Pleas of two counts of rape, one count of kidnaping and two one-year firearm specifications. We affirm.
On the night of September 27, 1996, Crystal Gleason, an eighteen-year-old college student, was hitchhiking to Erie, Pennsylvania to visit her family and boyfriend. She received a ride to the Duke and Duchess Shop in Lodi, where she attempted to find another ride. After determining that no one inside the Duke and Duchess was heading north toward Erie, she waited outside, hoping to find a ride. While sitting outside, she was approached by Taylor, who had heard that she needed a ride. Taylor told her that he was driving to Cleveland, and offered to give her a ride to a truck stop where she could probably find a ride the rest of the way to Erie. Gleason got into Taylor's car, and the two headed north on Interstate 71.
Gleason initially made small talk with Taylor, telling him about college and her home in Erie. During their conversation, Taylor told Gleason that he did not go to college and that he had once belonged to a gang. After driving north for a brief time, Taylor exited the highway and began driving in the opposite direction. When Gleason asked him where he was going, Taylor told her that he had a gun. She turned her head and saw that he was pointing a gun at her. Taylor demanded money, but Gleason told him that she had only $3.00. After cursing himself for giving a ride to someone who had no money, Taylor told Gleason that she would have to help him "rob someone else." Taylor drove around back roads and eventually drove down a long gravel drive.
After he stopped the car, Taylor ordered Gleason to take off her clothes. Gleason begged Taylor not to force her to have intercourse with him because she was afraid of contracting a sexually transmitted disease. Taylor agreed to have her perform fellatio instead. Gleason performed fellatio on Taylor for approximately five minutes. Taylor then drove around again and stopped at a different location. He blindfolded Gleason and led her into a trailer. As she stepped inside the trailer, Taylor pushed her and the blindfold fell down. Taylor told Gleason that he kept guns in the trailer and Gleason believed that Taylor was still holding a gun. Taylor forced Gleason to perform fellatio on him again. He then forced her to have sexual intercourse with him.
Taylor was indicted on two counts of rape and one count of kidnaping, each with a three-year firearm specification. Taylor later moved the trial court: (1) to suppress evidence that the police seized during a search of his residence and trailer pursuant to a warrant that he alleged was defective; (2) to suppress any in-court identification of him by Gleason because he claimed to have been denied his right to counsel during the line up at which she identified him; and (3) to suppress various incriminating statements he made to authorities in alleged violation of his constitutional and Miranda rights. After an evidentiary hearing, the trial court denied all suppression motions.
At the end of the jury trial, the trial court granted Taylor's motion for acquittal on the firearm specification attached to the first rape offense because there was insufficient evidence that the firearm Taylor brandished was operable. The remaining two firearm specifications were amended to one-year firearm specifications pursuant to R.C. 2941.141
because there was insufficient evidence that Taylor brandished a firearm during the kidnaping and second rape. The jury found Taylor guilty of one count of rape, based on the fellatio in the car, but was unable to reach a verdict on the remaining counts of the indictment. After the state indicated that it planned to retry Taylor, he entered a plea of no contest to the remaining counts in the indictment: rape, kidnaping, and two one-year firearm specifications. The trial court convicted him accordingly. Taylor appeals and raises eight assignments of error.
Taylor's first assignment of error is that the trial court erred in denying his motion to suppress certain statements he made to a sheriff's detective during interrogation. Taylor first asserts that these statements were obtained in violation of his Miranda rights. Specifically, he maintains that he asserted his right to counsel and that, without obtaining any waiver of that right, the detective continued to question him and elicited incriminating statements.
Taylor's claimed assertion of his right to counsel occurred immediately after the detective informed him of hisMiranda rights. Taylor stated, "I think that I would like an attorney." According to Taylor, this statement was sufficient to invoke his Miranda right to counsel. We disagree.
If, after being advised of his Miranda rights, an accused asserts his right to counsel, all questioning must cease until an attorney is present or he voluntarily, knowingly, and intelligently waives his right to counsel. Edwards v. Arizona
(1981), 451 U.S. 477, 482-483, 68 L.Ed.2d 378, 384-385. To assert one's Miranda right to counsel, it is not sufficient for a suspect to indicate that he might want a lawyer. He must unambiguously and unequivocally request counsel. Davis v.United States (1994), 512 U.S. ___, ___, 129 L.Ed.2d 362, 373. The United States Supreme Court found the statement, "Maybe I should talk to a lawyer" too ambiguous to invoke a right to counsel. Id. The Ohio Supreme Court, following Davis, held that the statement, "I think I need a lawyer" was likewise ambiguous and, therefore, not sufficient to invoke the Miranda right to counsel. State v. Henness (1997), 79 Ohio St.3d 53, 63. We see no distinction between the ambiguous statement in Henness and Taylor's statement, "I think that I would like an attorney." Taylor's request for counsel was equivocal and, therefore, was insufficient to invoke his Miranda right to counsel. Consequently, the trial court did not err in refusing to suppress the incriminating statements that were elicited by the detective.
Taylor further maintains that the trial court erred in failing to suppress these incriminating statements because he did not give them voluntarily.
 A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. (Colorado v. Spring [1987], 479 U.S. 564, 574, followed.)
State v. Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus. Taylor alleged that the detective coerced him by questioning him outside on a cool morning while he was dressed in shorts and by questioning him while he was obviously in a depressed mental state.
Taylor failed to demonstrate to the trial court, however, that his self-determination was critically impaired by either the cool temperatures or his mental state. At the hearing on the motion to suppress, the detective testified that it was cool outside and Taylor was dressed in shorts, but he indicated that he interrogated Taylor inside his vehicle with the heater on. In fact, the detective noted that it became so warm in the vehicle that he had to crack the door open. The detective further indicated that, despite Taylor's statements that he wanted to die, he believed that he was rational. A review of the taped interrogation fails to demonstrate that Taylor's will was overcome by either the cold or his despondent mental state.
Moreover, to determine whether Taylor's statements were voluntary, we must look at the totality of the circumstances.State v. Edwards (1976), 49 Ohio St.2d 31, 40-41. The interrogation of Taylor started at a reasonable hour (7:22 a.m.), after Taylor had presumably had a full night's sleep, it lasted a total of 65 minutes, and no threats or lies were used to induce the confession. Given the totality of the circumstances, Taylor fails to demonstrate that his statements were not given voluntarily. Taylor's first assignment of error is overruled.
Taylor's second assignment of error is that the trial court erred in accepting his plea of no contest to the second rape, the kidnaping, and the two firearm specifications. Taylor concedes that the trial court addressed him personally and conducted a colloquy that complied with the requirements of Crim.R. 11(C). Nonetheless, without developing a supporting argument, Taylor argues that his plea "was not the [product] of a knowing, intelligent and voluntary waiver of his constitutional rights." It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record. See App.R. 16(A)(7). Because Taylor's argument completely fails in this regard, he has not demonstrated any error by the trial court. The second assignment of error is overruled.
Taylor's third assignment of error is that his rape conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. Taylor was convicted of rape, in violation of R.C. 2907.02(A)(2), which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct includes fellatio. R.C. 2907.01 (A).
When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Martin (1983), 20 Ohio App.3d 172, 175.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, 4. We will initially determine whether Taylor's conviction was supported by the weight of the evidence, and if it was, it was necessarily supported by sufficient evidence as well.
The state's key evidence was the testimony of the victim, Crystal Gleason. Gleason testified that she met Taylor at the Duke and Duchess Shop and that he agreed to give her a ride north. Taylor drove north for a short time, but then turned around and began heading in the opposite direction. When Gleason asked him what he was doing, Taylor pulled a gun on her. He told her that he would not hurt her if she did what he said. Although Taylor initially told Gleason that they were going to rob a house, when he stopped the car, he told her to take off her clothes. After Gleason begged Taylor not to force her to have sexual intercourse, he forced her to perform fellatio. As Gleason bent her head down, she saw that Taylor was pointing a gun at her. Gleason testified that she performed fellatio on Taylor because he had threatened her with a gun and she believed that he would use it if she did not do as she was told.
Although Taylor attempts to discredit Gleason's testimony because it was not corroborated by physical or scientific evidence, there is no requirement that a rape victim's testimony be corroborated. State v. Matha (1995), 107 Ohio App.3d 756,759. Moreover, Gleason's testimony was corroborated, in large part, by the statements Taylor made to the sheriff's detective. Taylor admitted that he met Gleason at the Duke and Duchess Shop, that he agreed to give her a ride to a truck stop, that he asked her for money but she did not have any, that she was concerned that he was going to hurt her, that she performed fellatio on him in this car and that he had a gun throughout the incident. The only real contradiction between his account and Gleason's was that he never admitted that he pointed the gun at Gleason. Taylor stated that he pointed the gun at himself.
It was for the jury to determine the credibility of Gleason and the weight to give her testimony. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. It apparently chose to believe her testimony that Taylor forced her to perform fellatio in his car. Taylor fails to demonstrate that the jury lost its way in reaching such a conclusion. Taylor's rape conviction was not against the manifest weight of the evidence and, therefore, was supported by sufficient evidence. The third assignment of error is overruled.
Taylor's fourth assignment of error is that the trial court erred in denying his motion to suppress physical evidence because it was seized pursuant to a defective search warrant. The warrant was defective, according to him, because it was not supported by probable cause that evidence of a crime would be found and it failed to identify with specific particularity the places to be searched.
The sufficiency of probable cause in an affidavit submitted in support of a search warrant is determined as follows:
 "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Illinois v. Gates [1983], 462 U.S. 213, 238-239, followed.)
 * * * [T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. * * * [T]rial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.
State v. George (1989), 45 Ohio St.3d 325, paragraphs one and two of the syllabus.
Taylor's probable cause challenge focused on whether the affidavit demonstrated that there was a fair probability that evidence of a crime would be found at the premises. The facts set forth in the affidavit were that Gleason had told police that, a few weeks earlier, she was kidnaped and raped at gunpoint in a trailer that was located off a gravel drive lined by trees; that Gleason had identified Taylor as the suspect; that Taylor had been identified also from a videotape recording at the Duke and Duchess; that Taylor was seen again at the Duke and Duchess and an employee recorded his license plate number; that Taylor's address was ascertained by checking his motor vehicle registration; that Taylor lives in a house at the end of a 300-400 foot gravel drive lined by trees and that there are two trailers behind the house; and that, while Taylor drove Gleason to the trailer, she observed a sign for a road that is in the vicinity of Taylor's address. These detailed facts were sufficient to demonstrate that there was a fair probability that evidence of the kidnaping and second rape would be found on the premises.
A search warrant describes the premises to be searched with sufficient particularity if the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort and there is not a reasonable probability that different premises might be mistakenly searched. State v. Pruitt (1994), 97 Ohio App.3d 258, 261-262. The warrant to search Taylor's home and trailer described the premises as follows:
 [T]he residence and any outbuildings, trailers and[/]or vehicles located at 3388 West Easton Road, Congress Township, Wayne County, Ohio[.]
The record reveals that Taylor's home was, in fact, located at the West Easton Road Address. The trailer, where the alleged second rape occurred, was right behind the house. This was a rural area, with no other homes in close proximity. There was no evidence in the record to indicate that the executing officer could have been confused about the location of the premises or could have mistakenly searched another premises. Therefore, the search warrant described the premises to be searched with sufficient particularity. The fourth assignment of error is overruled.
Taylor's fifth assignment of error is that the trial court erred in denying his motion to suppress identification testimony. Taylor moved the trial court to suppress any in-court identification of him by Gleason because, according to him, he was denied his right to counsel during the line up at which Gleason originally identified him. Because the record reveals that the line up was conducted after Taylor had been indicted, he had the right to counsel during the line up. SeeUnited States v. Wade (1967), 388 U.S. 218, 237,18 L.Ed.2d 1149, 1163. Denial of an accused's right to counsel during a post-indictment line up does not necessarily require exclusion of any in-court identification by the same witness, however.Id. at 239-240, 18 L.Ed.2d at 1164. Even if the accused is denied his right to counsel during a line up, an in-court identification by the witness is admissible if the record demonstrates, by clear and convincing evidence, that the witness had an independent basis for her identification or that the admission of her identification testimony was harmless.State v. Lathan (1972), 30 Ohio St.2d 92, paragraph one of the syllabus. Whether the identification was based on independent recollection and observation of the defendant by Gleason will be determined from the totality of the circumstances. Id. at paragraph two of the syllabus.
Even if Taylor was denied his right to counsel during the line up, Gleason's in-court identification testimony was admissible because the evidence demonstrated that her identification of Taylor was not based on her observations during the line up, but was independently based on her observations and recollections of Taylor during the alleged crimes. Although Gleason was unable to recall exactly how long she was with Taylor that night, her testimony demonstrated that she was in close proximately to him for an extended period of time in several locations. She testified that she briefly spoke to him at the Duke and Duchess and that they drove around for a period of time prior to the rape in the car. During that time, Gleason was sitting next to Taylor in the front seat. Gleason indicated that, as they drove, they conversed for a while and then "started driving down back roads, and we finally got to this house, and he pulled into a driveway" where Taylor forced her to perform fellatio for approximately five minutes. Taylor then "continued driving around on back roads" until they arrived at his trailer. According to Gleason, Taylor took her into the trailer, forced her to perform fellatio and to have intercourse with him. After they redressed, Taylor "kept driving around looking for anyplace to drop me off."
Gleason positively identified Taylor at trial as the man who had committed the acts she described, she described what he was wearing that night, and noted that she remembered that he had a mole on his cheek. She also described her memory of the interior of his car and the interior and exterior of his trailer, descriptions that were corroborated by other evidence. Moreover, Taylor's challenge did not contend that the line up was unduly suggestive or that there was any other irregularity during the line up except the absence of his counsel. SeeLathan, supra, at paragraphs one, two, and three of the syllabus; see, also, State v. Kiraly (1977), 56 Ohio App.2d 37,49-50. The in-court identification, therefore, was properly admitted. Taylor's fifth assignment of error is overruled.
Taylor's sixth assignment of error is that he was prejudiced by the misconduct of the prosecutor by: (1) eliciting testimony that Taylor was a gang member; (2) exceeding the scope of cross-examination of Taylor's step-mother; (3) stating, during closing argument, that Taylor had admitted his guilt; and (4) by arguing to the jury that the state had the burden to prove sexual conduct only if Taylor denied it. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13,14. Taylor fails to demonstrate that any of the prosecutor's remarks met this test.
The prosecutor did elicit a brief statement from Gleason that Taylor had told her that he was once a member of a Cleveland gang. Although Taylor raised an objection to this evidence, the basis of his objection was hearsay, not that the evidence was an impermissible other act or that it was unduly prejudicial. Taylor has, therefore, waived all but plain error. State v.Clemons (1998), 82 Ohio St.3d 438, 444.
Taylor demonstrates no impropriety in the prosecution offering this evidence, much less plain error. Evidence that Taylor told Gleason that he was once a gang member was not admitted for the impermissible purpose of demonstrating that he acted in conformity with that type of behavior. See Evid.R. 404(B). Instead, it tended to prove that Taylor exerted the threat of force over Gleason. Having heard that Taylor was once a gang member, Gleason had reason to believe that he was serious when he threatened her with a gun.
Taylor further argues that the prosecutor exceeded the scope of cross-examination of his step-mother by asking her whether Taylor owned a shotgun and a .25 caliber pistol because this was not a matter Taylor raised during his direct examination of this witness. Taylor cites no authority to support his argument that the scope of cross-examination is so limited. In fact, the scope of cross-examination in Ohio is not limited to matters raised during direct examination. " 'A witness may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts into which the party calling such witness could have inquired in order to make out his case.' " State v. Rivers (1977), 50 Ohio App.2d 129,133, quoting Smith v. State (1932), 125 Ohio St. 137,148.
Taylor's possession of guns was a relevant issue because the state had offered evidence that Taylor possessed guns and that he threatened Gleason by telling her that he kept guns in the trailer. Although Taylor did not question his step-mother about whether he owned or possessed guns, he could have. The prosecution's brief questioning of Taylor's step-mother on this topic was not improper.
Taylor's final two challenges to the prosecutor's conduct are based on mischaracterizations of statements the prosecutor made during closing argument. Despite Taylor's assertions to the contrary, the prosecutor never stated that Taylor had admitted his guilt to all the crimes charged. During closing argument, the prosecutor stated a few times that Taylor had admitted that he had sexual conduct with Gleason. Because Taylor had admitted having sexual conduct with Gleason, the prosecutor's statement was true and, therefore, did not amount to misconduct.
The prosecutor also did not, as Taylor asserts, tell the jury that the state did not have the burden to prove sexual conduct. The prosecutor merely noted that the evidence was undisputed that Taylor and Gleason had sexual conduct. The only dispute, according to the prosecutor's argument, was whether Taylor forced Gleason to have sexual conduct with him against her will. As this was a correct characterization of the evidence, the remark was not improper. Taylor has not demonstrated any prosecutorial misconduct. The sixth assignment of error is overruled.
Taylor's seventh assignment of error is that the trial court erred in admitting a handgun into evidence because there was no proof that it was used to commit the alleged crimes. Because Taylor raised no such challenge to this evidence in the trial court, we review only for plain error. State v. Clemons (1998),82 Ohio St.3d 438, 444. This alleged error does not constitute a plain error "unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus.
The gun was admitted into evidence primarily to establish the firearm specification attached to the first charge of rape, which was dismissed at the end of the trial because this firearm was inoperable and there was no evidence that another, operable firearm was brandished by Taylor during the first rape. Because the jury did not reach a verdict on any offense other than the first rape, the only way that the admission of the gun possibly could have prejudiced Taylor was insofar as it established the force element of the rape offense. Even if the gun tended to establish that element, however, Taylor cannot demonstrate that the jury would not have convicted him without this evidence. Gleason testified that Taylor forced her to perform fellatio by threatening her with a gun, and her testimony, which the jury apparently believed, was sufficient to support the rape conviction. Therefore, even if Taylor could establish that the gun was erroneously admitted into evidence, any such error did not rise to the level of plain error. The seventh assignment of error is overruled.
Taylor's eighth assignment of error is that the trial court erred in failing to instruct the jury that the testimony of a police officer should not be deemed more credible than that of any other witness. Taylor has failed to demonstrate that the trial court's failure to instruct the jury specifically on the credibility of a police officer was error or that he was prejudiced thereby. After instructing the jury that it must determine the weight and credibility of witness testimony, the trial court stressed that the jury should "apply the above tests of credibility to all witnesses regardless of their occupation, position, and/or authority." Taylor has failed to even argue, much less demonstrate, that the trial court's general instruction on witness credibility was not sufficient to protect his interests. The eighth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ------------------- DANIEL B. QUILLIN FOR THE COURT
BAIRD, P. J., REECE, J., CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)