OPINION
Alex Fugate appeals the judgment from the Darke County Court of Common Pleas, Juvenile Division, adjudicating him delinquent by reason of having committed the charge of trafficking in marijuana. Fugate was given a suspended sentence to the Department of Youth Services conditioned upon the completion of a term of detention and probation.
On November 22, 1999, a delinquency complaint was filed against Fugate for selling, or offering to sell, marijuana in violation of R.C. 2925.03(A),(C)(3). This offense would have been a felony of the fifth degree if committed by an adult. Fugate entered a denial of the charge on December 1, 1999, and the case proceeded to an adjudicatory hearing on February 29, 2000. The evidence presented at the hearing established two different versions of the events in question. The State's version was as follows.
Late on May 1, 1999, Fugate, Joel Gruber, Nate Jasper and Kelly Ringle met at Christian Sharp's house. All of the individuals were minors, except Ringle, who was working undercover for Darke County's Operation Safe School Zones. Ringle was employed by North American Security Solutions (NASS) and had been sworn in as a Darke County Deputy Sheriff. She was placed in Greenville High School as a student to obtain evidence on drug abuse.
According to Gruber, who was given transactional immunity by the State in exchange for his testimony, he and Ringle had arrived at Sharp's house at approximately 11:30 p.m. on May 1, 1999 after attending their high school prom. At midnight, Gruber told Fugate that he wanted to purchase some marijuana. Fugate gathered money from several of the individuals and left Sharp's house. Shortly thereafter, Fugate returned with a baggie of marijuana which amounted to less than an eighth of an ounce of marijuana.
According to Ringle, who could not remember if the night in question had been Greenville's prom, after Fugate returned, Gruber, Fugate and Sharp had proceeded to Sharp's porch to smoke the marijuana. Both Gruber and Ringle denied having a bottle of "Firewater" with them that night, and neither could recall drinking anything but beer.
The defense's version of the events differed as follows. According to Sharp, Gruber gave money to Fugate to purchase marijuana, but when Fugate was unsuccessful at obtaining the drugs, he returned Gruber's money. Furthermore, Sharp was adamant that there had been no marijuana usage that evening, although he did recall the presence of alcohol at his house that night, and that Gruber and Ringle had had a bottle of "Firewater." Upon cross-examination, Sharp conceded that he did not know if Fugate had returned all of Gruber's money, or if he had just given Gruber "change" from the money he had handed Fugate previously.
According to Fugate, Gruber repeatedly asked him if he could "get any" marijuana that evening, so Fugate left Sharp's house in search of some marijuana to purchase. Fugate could not "find anyone," however, so he returned to Sharp's house. Fugate handed Gruber $5 upon returning to Sharp's house, but he stated that this money had been unrelated to the drug transaction and he had "owed it to him from before." During cross-examination, Fugate admitted that had he found marijuana, he had agreed to give Gruber "a joint" in lieu of the money he owed him.
The trial court issued its judgment entry on March 2, 2000, finding Fugate delinquent based upon his attempt to sell a controlled substance to another minor, an act in violation of R.C.2925.03(A). At the dispositional hearing held on March 8, 2000, the trial court "clarified" its March 2, 2000 order and stated that Fugate was found to be delinquent because he had offered to sell marijuana to Gruber. The trial court sentenced Fugate to $1,000 in fines and six months at the Department of Youth Services, suspended upon Fugate's compliance with probation, suspension of his driver's license for six months, and thirty days in detention.
Fugate now appeals his adjudication and his disposition, asserting two assignments of error. We will first address Fugate's second assignment of error as we find it dispositive of this matter on appeal.
 II. That {sic} trial court erred in unduly limiting the right of the juvenile to fully cross-examine the prosecution's witnesses. Fugate argues reversible error based upon his inability to challenge the State's case when the trial court limited defense counsel's cross-examination of Gruber in four areas. Fugate's first claimed error was the trial court's improper restriction of Gruber's testimony regarding why and when he moved from Greenville. The trial court ruled this line of questioning "irrelevant." Fugate argues that it was an issue involving Gruber's credibility. Fugate also takes issue with the trial court's restriction of Gruber's testimony pertaining to his understanding of transactional immunity. Fugate argues that the information sought was relevant to the issue of Gruber's credibility, and the restriction on cross-examination was an abuse of discretion. Fugate also argues that the trial court abused its discretion in limiting testimony pertaining to Gruber's knowledge of what had happened to the marijuana he had purchased from Fugate. Fugate claims that the issue would have affected Gruber's credibility and was relevant to the issue of why Ringle made "no effort" to secure any samples of the marijuana. Fugate further contends that this testimony would have "shed a greater light" on Gruber and Ringle's relationship, which may have affected their credibility. The record reflects that the trial court sustained the prosecutor's objection that the questioning was irrelevant and outside the scope of immunity.
Finally, Fugate asserts that the trial court abused its discretion in limiting the questioning of whether Gruber had purchased the "Firewater." During cross-examination, defense counsel pursued the following testimony:
Q. Did you have anything else to drink that night?
A. No, I don't think so.
Q. Did you have any Firewater?
A. No.
Q. You don't recall getting any from Nathan?
 A. I might have had a drink, but I don't recall ever drinking any.
 Q. Do you remember buying part of a bottle of Firewater off of Nate?
A. Yes.
 MR. HOOVER: I am going to object to this line of questioning, your Honor. This is outside one, his grant of immunity; and it is also irrelevant to this drug transaction.
 MR. HEGGIE: His grant of immunity didn't cover the actual sale, your Honor, because he can still be charged. So I don't think that is a very good objection at this point. And what he had consumed, which would affect his ability to observe and recall, certainly affects his credibility.
THE COURT: Overrule the objection.
Q. You did buy this Firewater from Nathan?
 MR. HOOVER: I am going to object again, your Honor. He is asking if he purchased alcohol, not whether he consumed it. Purchasing of alcohol is not going to have anything to do with his recollection of those facts as he has indicated, your Honor.
THE COURT: Sustained.
 (Tr. 24-26.) Based upon the following reasons, we sustain Fugate's assignment of error.
Evid.R. 611(B) defines the scope of cross-examination as including "all relevant matters and matters affecting credibility." On cross-examination, a party may inquire into all matters pertinent to the case that the party calling the witness would have been entitled or required to raise. Smith v. State
(1932), 125 Ohio St. 137, paragraph one of the syllabus. However, the trial court has broad discretion in imposing limits on the scope of cross-examination. State v. Cobb (1991), 81 Ohio App.3d 179,183. Moreover, the trial court is vested with broad discretion in deciding whether testimony is relevant or irrelevant, and in balancing the probative value against the danger of unfair prejudice. State v. Wells (March 13, 1997), Cuyahoga App. No. 70534, unreported. We will not interfere with the trial court's decision, absent an abuse of discretion. Id.
The term abuse of discretion "connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Evid.R. 607(A) states that "[t]he credibility of a witness may be attacked by any party." Evid.R. 404(A)(3) provides that "[e]vidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609." Evid.R. 608(B) permits cross-examination of a witness concerning specific instances of conduct "if clearly probative of truthfulness or untruthfulness." Whether evidence is probative is determined by its relevance to a matter in issue. "`Relevant evidence' means evidence having any tendency to make the existence of any fact more probable or less probable than it would be without the evidence." Evid.R. 401.
Fugate argues on appeal that the trial court abused its discretion when it prevented him from pursuing these four different lines of inquiry in his cross-examination of Gruber, each of which was intended to elicit evidence probative of Gruber's credibility. Gruber was one of two State's witnesses whose testimony directly implicated Fugate in the selling of marijuana. Fugate was entitled to impeach Gruber's credibility on cross-examination by enquiring into specific instances of Gruber's own conduct, as the matters involved were, or could have been, probative of Gruber's credibility. In view of the significance of Gruber's testimony, we find that Fugate was deprived of a substantial right by the rulings of the trial court which prohibited those inquiries. We hereby sustain the assignment of error with respect to the trial court's rulings limiting Fugate's cross-examination of Gruber in each of the four instances concerned.
Accordingly, Fugate's second assignment of error is sustained.
 I. The trial court erred in finding that the juvenile had offered to sell marihuana because there was insufficient evidence to find that there was an offer to sell. Based upon our decision in the second assignment of error, we need not address Fugate's first assignment of error.
The judgment of the trial court is hereby reversed and remanded for a new trial consistent with this opinion.
GRADY, P.J. and FAIN, J., concur.