DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Geizle Spearman, guilty of one count of tampering with records, in violation of R.C. 2913.42, a felony of the fourth degree, and one count of falsification, in violation of R.C.2921.13(A)(5), a misdemeanor of the first degree. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant appeals the decision of the trial court and raises the following assignments of error:
 {¶ 3} "1. It constituted error to deny appellant's motion for a mistrial.
 {¶ 4} "2. It constituted error not to require the jurors to specify which record or writing appellant was found guilty of having tampered with.
 {¶ 5} "3. Appellant's conviction on count two is unsupported by the evidence.
 {¶ 6} "4. It constituted error not to grant appellant's post trial motion for judgment of acquittal.
 {¶ 7} "5. It constituted error to allow appellant to be prosecuted under a general statute where a statute of special application specifically covers the conduct alleged to constitute the criminal offense.
 {¶ 8} "6. It constituted error to deny appellant's motion to suppress.
 {¶ 9} "7. The cumulative effect of all assigned errors operated to deprive appellant of a fair trial, requiring reversal of both convictions as a matter of due process."
 {¶ 10} This matter arose as a result of forms and applications submitted to the Ohio Department of Commerce, Division of Liquor Control ("Commerce Department"), by Starlite Promotions, Inc. ("Starlite"), and signed by appellant, as president of the corporation. Appellant and her husband, Glenn Hall, were charged with tampering with records, in violation of R.C. 2913.42. Specifically, appellant and Hall were accused of having uttered, on or between July 28, 1997 and May 31, 2000, falsified writings, with the purpose of defrauding or knowing that they were facilitating a fraud, which were kept by or belonged to a state governmental entity. Appellant alone was also charged with falsification, in violation of R.C. 2921.13. With respect to the falsification charge, appellant's indictment stated that on or about April 30, 1999, appellant "knowingly [made] a false statement, knowingly [swore] or affirm[ed] the truth of a false statement previously made, with purpose to secure the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement."
 {¶ 11} Appellant argues in her first assignment of error that the trial court erred in denying her motion for a mistrial. Specifically, appellant argues that she was indicted with the incorrect statutory section regarding the falsification charge. Appellant's indictment referenced R.C. 2921.13(A)(4), when, in fact, the state proceeded at trial under R.C. 2921.13(A)(5).
 {¶ 12} At trial, during the state's opening statements, the state referenced the language contained in R.C. 2921.13(A)(5), rather than (A)(4). Defense counsel stated in his opening statement that the state, in fact, was unable to prove a violation of R.C. 2921.13(A)(4), which concerns statements made with the purpose of securing payments of unemployment compensation, aid to dependent children, disability assistance, retirement benefits, economic development assistance, or other benefits administered by a governmental agency or paid out of a public treasury.
 {¶ 13} A discussion was held in chambers. Defense counsel argued that, in formulating the defense, he had relied on the state proceeding under R.C. 2921.13(A)(4). The state responded that although the indictment contained a typographical error with respect to the statutory number, the language in the indictment was the exact language contained in R.C. 2921.13(A)(5). The state argued that defense counsel would have had to ignore the language in the indictment and rely solely on the statutory numerical reference, which was "a ludicrous assumption." The state then moved to amend the indictment to include reference to R.C.2921.13(A)(5), rather than (A)(4). The trial court granted the state's request and informed the defense that the jury would be told that a clerical error contained in the indictment had been rectified.
 {¶ 14} On appeal, insofar as counsel had already taken a defense position in opening statements on the basis of appellant having been indicted under R.C. 2921.13(A)(4), appellant argues that the defense was embarrassed and unfairly prejudiced by the trial court permitting the state to amend the indictment during trial. Appellant argues that allowing such "could only result in a loss of credibility for the accused in the eyes of the trier of fact and most probably undermined defense's ability to successfully defend." Appellant argues that the trial court should have discharged the jury upon appellant's request for a mistrial, as provided for by Crim.R. 7(D). We disagree.
 {¶ 15} Crim.R. 7(D) states:
 {¶ 16} "(D) Amendment of indictment, information, or complaint. The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefore is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted."
 {¶ 17} We find that the trial court properly allowed the state to amend the indictment. Crim.R. 7(D) provides that such an amendment can be done during trial with "respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." The language of the indictment clearly stated that appellant was charged with falsification for knowingly making a false statement, or knowingly swearing or affirming the truth of a false statement previously made, "with purpose to secure the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement." Although the indictment references R.C. 2921.13(A)(4), the language incorporated in the indictment is clearly that of R.C.2921.13(A)(5). Therefore, we find that the state's amendment of the indictment merely rectified a defect in the statutory number referenced in the indictment. This amendment did not change the substance of the indictment, or change the name or identity of the crime charged.
 {¶ 18} Moreover, despite appellant's argument to the contrary, we find that the defense was not misled or prejudiced by the defect. Based upon the language of the indictment, as well as the Amended Bill of Particulars, filed on April 25, 2001, which referenced both the correct statutory number and language of R.C. 2921.13(A)(5), we find that appellant was clearly provided sufficient notice as to all the elements of the offense with which she was charged. Accordingly, we find that the trial court did not err in denying appellant's motion for a mistrial. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 19} Appellant argues in her second assignment of error that, with respect to the tampering with records charge, the trial court erred in not requiring the jurors to specify which record or writing appellant was found guilty of having tampered with. Appellant argues that the state never identified any particular writing or record that appellant was alleged to have tampered with, and that the state did not take a specific position in that regard during trial.
 {¶ 20} Appellant asserts that because the allegedly improper conduct occurred over a long period of time, July 28, 1997 to May 30, 2000, and involved a lot of documents, there is no way to know whether the jury's verdict was unanimous. Appellant argues that in cases involving false statements, the requirement of a unanimous jury verdict means that it is necessary that the jury unanimously agree as to which particular document, writing or statement was false. Because the jury was not required to identify the document which they each found to have been tampered with, appellant asserts that some jurors could have concluded that one document was tampered with, while others found that another document had been tampered with, thus resulting in a less than unanimous verdict.
 {¶ 21} Appellant is correct that the indictment did not specify a particular document, uttered between July 28, 1997 and May 30, 2000, that appellant allegedly falsified. However, despite appellant's assertion to the contrary, the state did present to the jury a single document which it asserted proved appellant's guilt with respect to the tampering with records charge. Specifically, the state presented the jury with State's Exhibit No. 9, which was an affidavit signed by appellant on February 19, 1998. Appellant's affidavit stated that "Glenn E. Hall does not now, nor will he have in the future, any financial interest in the business known as the New Greenlite Club."
 {¶ 22} There were many other documents presented in the case which were offered to establish that, over an expansive period of time, Glenn Hall, in fact, did have a financial interest in the business, both before and after the February 19, 1998 affidavit. The state did not allege that any of the documents, besides appellant's affidavit, were tampered with by appellant for purposes of Count 1 of the indictment. Rather, the numerous other documents were presented merely to establish that the contents of appellant's affidavit were false. Additionally, we note that although the state also referenced State's Exhibit Numbers 2A and 7 in its closing arguments as having been falsified documents, we find that exhibit 2A was executed on November 18, 1996, outside the relevant time period, and exhibit 7 was an affidavit signed by Glenn Hall, not appellant.
 {¶ 23} Accordingly, insofar as only one allegedly falsified document was presented to the jury for its consideration with respect to appellant's tampering with records charge, we find that the jury's finding of guilty was unanimous with respect to that count. Accordingly, we find that the trial court did not err and appellant was not prejudiced by the trial court's refusal to instruct the jury to identify the record or writing it concluded appellant was guilty of having tampered with. Appellant's second assignment of error is therefore found not well-taken.
 {¶ 24} Appellant argues in her third assignment of error that her conviction on Count 2 is unsupported by the evidence. Count 2 alleged that appellant signed a false affidavit on April 30, 1999, which she attached to an "Application for Renewal of Permits," and submitted to the Commerce Department, on or about May 26, 1999. The alleged false statements concerned whether her husband had any financial interest in the business.
 {¶ 25} Appellant argues that the affidavit was erroneously attached to the permit renewal application and, in fact, was actually the second page of an "Application for Stock Transfer Consent" that was submitted to the Commerce Department on June 14, 1999. Because appellant asserts that her April 30, 1999 affidavit was not related to the license renewal application, appellant argues that she could not be convicted of R.C.2921.13(A)(5), which prohibits making a false statement for the purpose of securing the issuance by a governmental agency of a license or permit. We disagree.
 {¶ 26} The legal concept of sufficiency of the evidence concerns a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 27} Upon reviewing the evidence, we find that there was sufficient evidence, if believed, to support a criminal conviction on the basis of R.C. 2921.13(A)(5). Appellant argues that Walter Skotynsky, the attorney who prepared the "Application for Stock Transfer Consent" form, recognized that the affidavit that was attached to the renewal application actually belonged with the stock transfer form, not the renewal application. Upon review of Skotynsky's testimony, however, we do not find it to be as conclusive as appellant suggests.
 {¶ 28} Skotynsky recognized that the front page of the renewal application was handwritten, whereas the affidavit was typewritten, and that the affidavit attached to the stock transfer "appears to be the same as the back of the renewal." However, Skotynsky also testified that although the affidavit seemed to be the second page of the stock transfer form, he would "have to verify that that's the back page of either one." At best, Skotynsky's testimony was that, if the affidavit was the second page of the stock transfer form, they both would have been sent down to the department of liquor control.
 {¶ 29} Despite Skotynsky's testimony, which is ambiguous at best, we find that the jury could nevertheless have believed that appellant submitted the affidavit with the renewal application. Moreover, given the fact that the affidavit was signed closer in time to the submission date of the renewal application, rather than the stock transfer form, we find it is quite believable that appellant submitted the affidavit with the renewal application. Accordingly, we find that there was sufficient evidence to establish appellant's guilt beyond a reasonable doubt with respect to each element of the crime of falsification, in violation of R.C. 2921.13(A)(5). Appellant's third assignment of error is therefore found not well-taken.
 {¶ 30} Appellant argues in her fourth assignment of error that the trial court erred in denying her post trial motion for judgment of acquittal. Specifically, appellant argues that the state did not specify which documents it was relying on as a basis for the tampering with records charge and the falsification charge. As such, appellant argues that the jury could have relied on the falsified April 30, 1999 affidavit when convicting appellant on both counts. We disagree.
 {¶ 31} As discussed with respect to appellant's second assignment of error, the state did reference a particular document as a basis for the tampering with records charge, specifically, appellant's February 19, 1998 affidavit. Also, despite appellant's assertions to the contrary, the state specifically referenced appellant's April 30, 1999 affidavit as the basis for the falsification charge. Accordingly, we find that appellant was not convicted of two separate offenses for the identical conduct and her rights against double jeopardy were not violated. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 32} Appellant argues in her fifth assignment of error that it was error to allow appellant to be prosecuted under a general statute where a statute of special application specifically covers the conduct alleged to constitute the criminal offense. Appellant argues that "[s]ince the General Assembly enacted Ohio Revised Code Section 2921.13(A)(5) to cover situations where false statements were made to secure issuance of a license or permit for a governmental agency, the General Assembly did not intend that the same conduct, prosecutable as a misdemeanor under Section 2921.13(A)(5), to be prosecutable as a felony under Ohio Revised Code Section 2913.42(B)(4)." Appellant argues that the situation in this case is analogous to that presented in Statev. Volpe (1988), 38 Ohio St.3d 191. We disagree.
 {¶ 33} Well-established principles of statutory construction require that specific statutory provisions prevail over conflicting general statutes. R.C. 1.51 states that:
 {¶ 34} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 {¶ 35} In State v. Volpe, the Ohio Supreme Court found that R.C. 2915.02(A)(5) and 2923.24 were irreconcilable. R.C. 2923.24
generally made possession and control of criminal tools a felony of the fourth degree, whereas R.C. 2915.02(A)(5) specifically made possession and control of gambling devices a misdemeanor of the first degree. As such, the Ohio Supreme Court held that the specific statute concerning gambling devices, in particular, prevailed over the general statute which encompassed any criminal tool. The court held that the general statute could not be used to charge and convict a person of possessing and controlling a gambling device.
 {¶ 36} In this case, however, we find that R.C. 2921.13(A)(5) and R.C. 2913.42(B)(4) are not irreconcilable. R.C. 2913.42
prohibits any person from knowingly uttering any falsified "writing or record" which "is kept by or belongs to a local, state, or federal governmental entity * * *." Whereas, all that is necessary to violate R.C. 2921.13(A)(5) is that a person "knowingly make a false statement" for the purpose of securing "the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement." R.C. 2921.13(A)(5) clearly does not require that the statement be made in writing or that the falsified writing or record be kept by a governmental entity. As such, we find that the statutes do not prohibit the identical conduct and that a violation of R.C. 2921.13(A)(5) would not necessarily result in a violation of R.C. 2913.42.
 {¶ 37} Clearly, the General Assembly considered that the uttering of a falsified written document or record, that was to be maintained by a governmental agency, was more egregious conduct, necessitating a greater degree of offense, than making a statement, whether oral or written, for the purpose of securing the issuance of a license or permit. Moreover, we note that absent a discriminatory purpose, it is not unconstitutional for the prosecution to determine, within its discretion, which offense will be charged when two statutes proscribe similar conduct. State v. McDonald (1987), 31 Ohio St.3d 47, 50, citing, State v. Wilson (1979), 58 Ohio St.2d 52, 55, at fn. 2. As such, we find that it was properly within the state's discretion to proceed under R.C. 2913.42 with respect to appellant's February 19, 1998 affidavit, and under R.C.2921.13(A)(5) with respect to appellant's permit renewal application and April 30, 1999 affidavit.
 {¶ 38} Accordingly, we find that the trial court did not err in denying appellant's motion for judgment of acquittal on this basis. Appellant's fifth assignment of error is therefore found not well-taken.
 {¶ 39} Appellant argues in her sixth assignment of error that the trial court erred in denying her motion to suppress. Specifically, appellant argues that the search warrant for the search of her home was overbroad, that the officers executing the search warrant exceeded the scope of the search warrant, and that the search warrant executed for the seizure and search of the computer was issued without a sufficient factual basis from which a finding of probable cause could have been made. Appellant argues that all evidence obtained pursuant to the search warrants should be suppressed because "this is not a case where the items seized beyond the scope of the warrant can be severed from those seized pursuant to the warrant."
 {¶ 40} In this case, the search warrant issued for the search of appellant's home directed the officers to search for and seize items described as follows:
 {¶ 41} "* * * any and all records and documents tending to establish control, ownership and interest of all parties involved in Starlight [sic] Promotions Inc. located at 1941 N. Detroit Ave. Toledo, Ohio and the marriage of Glenn E. Hall, dob * * *, ssn * * * to Geizel [sic] A. Spearman, dob * * *, ssn * * *."
 {¶ 42} The Fourth Amendment to the United States Constitution provides that no warrants shall issue except those "* * * particularly describing * * * the things to be seized." See also Ohio Constitution, Article I, Section 14. An essential purpose of the particularity requirement is to prevent general exploratory searches. State v. Schlosser (May 24, 1996), Montgomery App. No. 14976, reversed on other grounds by State v. Schlosser
(1997), 79 Ohio St.3d 329. "The objective of the particularity requirement is to limit the discretion of the officers who perform the search." Id. The specificity required usually varies, depending upon the particular nature of the crime investigated and the nature of the evidence sought. State v. Benner (1988),40 Ohio St.3d 301, 307. Where the items to be seized are evidence or instrumentalities of a crime, "the key inquiry is whether the warrants could reasonably have described the items more precisely than they did." Id.
 {¶ 43} In State v. Schlosser, supra, the Second Appellate District held that "judicial officers must exercise caution where the description of records to be seized is so sweeping as to authorize a general exploratory search, for example, `all records' of a business. Nevertheless, where there exists probable cause to believe that a pervasive scheme to defraud permeates the entire operation of a business, all of the business records of that enterprise may be seized, and a simple description of the records of that business will suffice. See LaFave, Search and Seizure (Third Edition), Section 4.6(d) at fn. 95 (and cases cited therein)." In Schlosser, because the entire business operation appeared to be an elaborate scheme designed to defraud, the court concluded that all business related books, records, and equipment constituted evidence and instrumentalities of that fraud which police could properly seize.
 {¶ 44} In the instant case, we find that it would have been extremely difficult for the police to precisely describe all potential types of records or documents which could tend to establish control, ownership and interest of the parties involved with Starlite and the subject premises. Until the searches took place, the officers could not precisely know what particular items would establish the nature and extent of the parties' involvement in the subject property. Moreover, given the particular nature of the crimes under investigation and the manner in which they were alleged to have been committed, the items to be seized were clearly related to appellant's suspected criminal behavior.
 {¶ 45} Accordingly, we find that the items were described with as much specificity as was reasonable, given that law enforcement investigators had not yet examined the documents or pieced together the many types of transactions which could tend to reveal control, ownership, and interest. While the warrant arguably encompassed a broad variety of records and documents, the warrant did not permit the officers to simply take any item they wanted from appellant's home. We therefore find that the warrant placed a meaningful restriction on the executing officers, insofar as they could only seize those items that could tend to establish "control, ownership and interest" in the subject business.
 {¶ 46} Appellant additionally argues, however, that the officers executing the search warrant exceeded the scope of the search warrant and, as such, no good faith exception to the exclusionary rule can apply in this case. Specifically, appellant asserts that the officers assisting Agent Earl Mack with the search warrant were "instructed to seize additional items not named in the warrant and that [were] not even mentioned or described in the affidavit that was submitted to obtain the warrant."
 {¶ 47} Pursuant to the testimony of the suppression hearing, the trial court determined that the officers were not instructed to seize anything beyond what was specified in the search warrant and that the scope of the search warrant was not exceeded. We agree. The officers conducting the search were instructed to look for items that could connect appellant or her husband with the subject premises. They were also given names of individuals and other businesses which were believed to have a potential connection with the subject business's control or ownership. The officers who testified regarding the items seized had a reasonable explanation and rationale for seizing the items they did. Given the hidden nature of the alleged crime, control, ownership or identity of those having a financial interest were not necessarily readily apparent on each document seized. Accordingly, we find that the items seized could have established control, ownership or a financial interest in the subject business, and that the officers seizing these items did so with good faith and did not exceed the scope of the warrant.
 {¶ 48} With respect to the search warrant issued for seizure of the computer in appellant's home, appellant argues that the warrant was issued on a "bare bones" affidavit and was without sufficient factual basis from which a finding of probable cause could have been made.
 {¶ 49} We initially note that appellant fails to indicate what incriminating evidence was obtained from the computer which should be suppressed. Nevertheless, we find that the affidavit was sufficient in this case.
 {¶ 50} The affidavit in question stated the following:
 {¶ 51} "On Friday August 11th, 2000, while executing a search warrant on the above listed address, officers of the Toledo Police Department, while conducting a search of the first floor rear office discovered records and documents that were found around the computer, tending to establish control, ownership and interest in Starlite Promotions. Based on the above evidence, it is believed that this computer contains other computer data, that will establish evidence."
 {¶ 52} Crim.R. 41(C), states in part:
 {¶ 53} "A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall * * * state the factual basis for the affiant's belief that such property is there located."
 {¶ 54} In State v. Bean (1983), 13 Ohio App.3d 69, 71, this court held that when reviewing an affidavit, we must "ensure, through a conscientious review of the affidavit, that the issuing magistrate had a `substantial basis' for concluding that probable cause existed to search. [Citations omitted.]" We further held that "`courts should not invalidate * * * warrant[s] by interpreting the affidavit[s] in a hypertechnical, rather than commonsense, manner.' United States v. Ventresca (1965),380 U.S. 102, 109. Affidavits should be (and must be) construed, interpreted and reviewed in a common-sense and realistic fashion.United States v. Seta (C.A. 6, 1982), 669 F.2d 400, 402.'" Id. at 73.
 {¶ 55} Clearly, in the day of home and office computers, commonsense tells us that the fact that records and documents, which tend to establish control, ownership and interest in the subject business, were found around the computer most likely indicates that other documents of this nature may still be on the computer. Accordingly, we find that the affidavit in question provided a substantial basis and that probable cause existed to issue a search warrant.
 {¶ 56} We therefore find that appellant's sixth assignment of error, regarding the search warrants issued in this case, is found not well-taken.
 {¶ 57} Appellant argues in her seventh assignment of error that all the assigned errors operated to deprive appellant of a fair trial, requiring reversal of both convictions as a matter of due process. Having found no error with respect to appellant's convictions, we find appellant's seventh assignment of error not well-taken.
 {¶ 58} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Judgment Affirmed.
Knepper, J., Pietrykowski, J. and Singer, J., concur.