[Cite as *State v. Leasure*, 2015-Ohio-5327.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA3484 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| CHRISTOPHER LEASURE, | : | |
| Defendant-Appellant. | : | RELEASED: 12/16/2015 |

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for appellant.

Sherri K. Rutherford, City of Chillicothe Law Director, and Pamela C. Wells, City of Chillicothe Assistant Law Director, Chillicothe, Ohio, for appellee.

Hoover, P.J.

{¶1}   Defendant-appellant, Christopher Leasure ("Leasure"), appeals his conviction in the Chillicothe Municipal Court for operating a motor vehicle under the influence ("OVI") with a prior conviction and refusal in violation of R.C. 4511.19(A)(2).[1] After a careful review of the record and relevant case law, we affirm Leasure's conviction.

**I. Facts and Procedural Posture**

{¶2}   During the early morning hours of May 18, 2014, Sergeant Heath Ward of the Ohio State Highway Patrol came upon a vehicle in a ditch on Kingston-Adelphi Road in Ross County, Ohio. Leasure was sitting in the driver's seat of the vehicle; and no one else was located in or around the vehicle. After making observations suggesting Leasure may have been under the

---

[1] Leasure was also convicted in the trial court of failure to control in violation of R.C. 4511.202; but he has not appealed the failure to control conviction.

influence of alcohol, Sergeant Ward decided to administer several field sobriety tests. Leasure

performed poorly on each test. Sergeant Ward then placed Leasure under arrest for an OVI

violation, read Leasure his Miranda rights, and advised Leasure of the consequences of

submitting to, or refusing to take, a chemical test to determine his alcohol concentration. Leasure

refused to submit to a breath test. Leasure was cited for OVI with a prior conviction and refusal

in violation of R.C. 4511.19(A)(2), failure to control in violation of R.C. 4511.202, and failure to

wear a driver's seat belt in violation of R.C. 4513.263(B)(1). R.C. 4511.19(A)(2) reads as

follows:

> No person who, within twenty years of the conduct described in division (A)(2)(a)
>
> of this section, previously has been convicted of or pleaded guilty to a violation of
>
> this division, a violation of division (A)(1) or (B) of this section, or any other
>
> equivalent offense shall do both of the following:
>
> (a) Operate any vehicle, streetcar, or trackless trolley within this state while under
>
> the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless
>
> trolley as described in division (A)(2)(a) of this section, being asked by a law
>
> enforcement officer to submit to a chemical test or tests under section 4511.191 of
>
> the Revised Code, and being advised by the officer in accordance with section
>
> 4511.192 of the Revised Code of the consequences of the person's refusal or
>
> submission to the test or tests, refuse to submit to the test or tests.

{¶3}    Prior to trial, Leasure filed a multi-branch motion with the trial court entitled

"MOTIONS". (OP 21). Through the motion, Leasure: (1) moved the trial court, in limine, to

exclude any reference of his refusal to submit to the breath test at trial; (2) argued that R.C. 4511.19(A)(2) violated, inter alia, his Fifth Amendment rights and was thus unconstitutional; and (3) moved the trial court, "in the alternative", to exclude reference to his prior OVI convictions at trial, or to bifurcate the OVI element and try it separately from the refusal element of R.C. 4511.19(A)(2). The trial court overruled the motion and the matter proceeded to trial.

{¶4} On the day of and immediately prior to trial, Leasure filed a proposed jury instruction seeking instruction on "the defense of mischarge". Specifically, Leasure argued that the jury should be informed of the difference between an OVI offense and the offense of having physical control of a vehicle while under the influence, and decide whether the State erred in pursuing the OVI charge. The trial court denied the proposed jury instruction.

{¶5} Sergeant Ward testified for the State. Sergeant Ward indicated that he is a 14-year veteran with the Ohio State Highway Patrol. He also testified to the extensive training and experience he has in dealing with impaired drivers; he estimated that he has participated in approximately 1,500 OVI arrests during his career.

{¶6} Sergeant Ward testified that on May 18, 2014, he was dispatched to Kingston-Adelphi Road on a call that a vehicle was in the ditch. Approximately 4:30 a.m., Sergeant Ward arrived at the scene. According to Sergeant Ward, the conditions were foggy. As Sergeant Ward approached the vehicle, he found Leasure located inside the vehicle, sitting in the driver's seat, with his head slumped over onto the driver's side window. Sergeant Ward indicated that the vehicle was partially in the ditch and partially in the westbound lane of the roadway. Sergeant Ward also testified that the vehicle could have been struck if someone would have come by in the lane of travel. No one else was located in or around the vehicle. The vehicle was running with its headlights on and was placed in park. Sergeant Ward testified that Leasure took 10 to 15

seconds to wake up, and that when he asked Leasure for his license, Leasure handed him a cell phone. Leasure stumbled when exiting the vehicle; and Sergeant Ward had to grab Leasure's arm to prevent him from falling into the ditch. Based on his observations, Sergeant Ward believed that Leasure was trying to turn around in the roadway but inadvertently backed up too far into the muddy ditch. Consequently, the car was unable to be moved by Leasure. Sergeant Ward did not observe any obvious damage to the vehicle.

{¶7} Notably, Sergeant Ward testified that he made several observations suggesting Leasure may have been under the influence of alcohol. Specifically, Leasure had slurred speech, a blank stare, red, bloodshot and glassy eyes, and a red and flushed face. Sergeant Ward also smelled alcohol on Leasure's breath and observed that Leasure had poor balance and had difficulty standing. Based on these observations, Sergeant Ward decided to administer field sobriety tests. With regards to the Horizontal Gaze Nystagmus ("HGN") field sobriety test, Sergeant Ward testified that Leasure exhibited six clues and that four clues indicate impairment. On the walk and turn field sobriety test, Leasure exhibited four clues out of eight and two indicate impairment. Sergeant Leasure also testified that Leasure failed the one-leg stand field sobriety test because he put his foot down four times in 23 seconds, and because he exhibited three clues, when two indicate impairment. A video of the field sobriety tests was played at trial and admitted as evidence. The recording, however, does not contain any audio during the administration of the field sobriety tests.

{¶8} After conducting the field sobriety tests, Sergeant Ward placed Leasure under arrest for an OVI violation and read Leasure his Miranda rights. Sergeant Ward then verbally advised Leasure, in accordance with R.C. 4511.192, of the consequences of submitting to, or refusing to take, a chemical test or tests to determine alcohol concentration, and gave Leasure the

form described in R.C. 4511.192(B). Leasure then refused to submit to a breath test. Sergeant Ward also testified that Leasure had a prior conviction for OVI from June 24, 2011; and a certified copy of the prior conviction was admitted as evidence despite defense counsel's objection. Finally, according to Sergeant Ward, Leasure indicated to him that he had arrived approximately 10 minutes before the officer arrived at the scene.

{¶9}     Leasure testified in his own defense. Leasure testified that on the night of May 17, 2014, he attended a friend's house warming party near Laurelville, Ohio. He arrived to the party between 11:00 and 11:30 p.m.  Leasure indicated that he was suffering from the flu, was not feeling well, and had taken NyQuil earlier in the evening. Leasure testified that upon arriving at the home, he gave his vehicle keys to a friend in case he drank too much. According to Leasure, while at the party, he drank one or two beers and fell ill.

{¶10}   Leasure testified that he left the party around midnight. He stated that he was unfamiliar with the road and that it was dark and "very foggy". According to Leasure, after driving five to seven miles he became sicker, and decided to turn around and drive back to his friend's house to "sleep it off". Leasure indicated that he stopped his vehicle on Kingston-Adelphi Road, turned, and as he backed-up he drove partially into a ditch. He described his rear tires as being "caked in mud". Leasure attempted to dislodge the car; but his attempts to move the vehicle were unsuccessful.

{¶11}   Leasure denied that he had only been stuck in the ditch for ten minutes, as testified by Sergeant Ward. Rather, Leasure testified that after becoming stuck in the ditch shortly after midnight he called his friends and his dad to come find him. However, neither his friends nor his father were able to locate him by the time Sergeant Ward arrived at 4:30 a.m. Moreover, upon cross-examination, Leasure admitted that the first outgoing call on his cell

phone records was made at 3:08 a.m.; although there were incoming calls preceding that time. Finally, Leasure testified that he performed poorly on the field sobriety tests because his boots were caked in mud, the lights from the patrol vehicle shined in his eyes, because he had the flu, and because he had taken NyQuil.

{¶12}  Prior to the court instructing the jury on the law, Leasure's trial counsel again proffered that the jury be instructed on "mischarge", but the trial court refused to give the proposed jury instruction. The jury returned a guilty verdict on the OVI offense; and the trial court found Leasure guilty of the failure to control offense, but not guilty of the seatbelt violation.

{¶13}  For his OVI conviction, Leasure was sentenced to 60 days in jail, 90 days of house arrest upon his release from jail with SCRAM monitoring, ordered to pay a $1,000 fine and court costs, issued a three-year license suspension, and was placed on community control for three years. For the failure to control conviction Leasure was ordered to pay costs only. The trial court suspended Leasure's jail sentence and fines/costs pending this timely appeal, provided he wear a SCRAM bracelet.

## II. Assignments of Error

{¶14}  Leasure assigns the following errors for our review:

1. IS RC §4511.19(A)(2) UNCONSTITUTIONAL?

2. WAS IT PREJUDICIAL ERROR TO ADMIT INTO EVIDENCE DEFENDANT'S PRIOR CONVICTION?

3. DID THE COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO SEVER?

4. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT DID NOT PERMIT DEFENDANT TO CROSS-EXAMINE THE OFFICER ON HIS FAILURE TO CHARGE PHYSICAL CONTROL?

5. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED DEFENDANT'S PROPOSED JURY INSTRUCTIONS?

### III. Law and Analysis

### A. Constitutionality of R.C. 4511.19(A)(2)

{¶15}  In his first assignment of error, Leasure contends that R.C. 4511.19(A)(2) is unconstitutional because it violates the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution. Leasure also contends that the statute violates the Fifth Amendment's constitutional safeguard against double jeopardy.

{¶16}  "[S]tatutes enjoy a strong presumption of constitutionality." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 8. "A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional." *Id*. We use a de novo standard of review to assess errors based upon violations of constitutional law. *State v. Burgette,* 4th Dist. Athens No. 13CA50, 2014–Ohio–3483, ¶ 10.

### 1. R.C. 4511.19(A)(2) and the Privilege Against Self-Incrimination

{¶17}  In regards to his self-incrimination argument, Leasure contends that R.C. 4511.19(A)(2) criminalizes a suspect's refusal to submit to a chemical test, and thus, mention of a suspect's refusal to submit to a chemical test becomes an admission of a criminal act.

{¶18}  The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *State v. Leach,* 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, ¶ 11. "[T]he privilege [against self-incrimination] protects an accused only from being *compelled* to testify against himself, or otherwise provide the State with

evidence of a *testimonial* or *communicative* nature[.]" (Emphasis added.) *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

{¶19}   R.C. 4511.19(A)(2) contains three elements: (1) an OVI/DUI conviction within 20 years of the current violation, (2) operation of a vehicle while under the influence of alcohol or drugs, and (3) a refusal to submit to a chemical test while under arrest for the current OVI. *Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, at ¶ 13. The Ohio Supreme Court has made clear that the refusal to submit to chemical testing when arrested on probable cause for OVI is not, itself, a criminal offense. *Id*. at ¶ 21. Rather, "[t]he activity prohibited under R.C. 4511.19(A)(2) is operating a motor vehicle under the influence of drugs or alcohol", and a suspect's "refusal to take a chemical test is simply an additional element that must be proven beyond a reasonable doubt along with the person's previous * * * [OVI] conviction to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a)." *Id*. The distinction between these offenses is important because the mandatory minimum jail terms are greater for a violation of R.C. 4511.19(A)(2) than they are for a violation of R.C. 4511.19(A)(1)(a). *Id*., citing R.C. 4511.19(G)(1)(b)(i) and (ii).

{¶20}   The United States Supreme Court has held that the admission of a defendant's refusal to take a chemical test at trial does not violate a defendant's Fifth and Fourteenth Amendment rights. *South Dakota v. Neville*, 459 U.S. 553, 564-566, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Likewise, the Ohio Supreme Court has held that a defendant's refusal to submit to a chemical test may properly be considered by the trier of fact when evaluating whether a defendant was under the influence of alcohol. *Maumee v. Antistik*, 69 Ohio St.3d 339, 632 N.E.2d 497 (1994), syllabus; *see also State v. Crace*, 4th Dist. Athens No. 12CA13, 2013-Ohio-

3417, ¶ 7 ("Thus, it appears to be well-settled that evidence of Appellant's refusal to submit to chemical testing was relevant and, as such, admissible at trial.").

{¶21}  In *Middleburg Hts. v. Henniger*, 8th Dist. Cuyahoga No. 86882, 2006-Ohio-3715, the Eighth District Court of Appeals was presented the question "whether, because the refusal is an element of R.C. 4511.19(A)(2) rather than a circumstantial evidentiary consideration of impairment, the nature of the police inquiry to submit to a test changes" – i.e. "whether or not a defendant's refusal to submit to a breath test after being charged under R.C. 4511.19(A)(2) violated the protections of the Fifth and Fourteenth Amendments." *Henniger* at ¶ 14; *Parma v. Benedict*, 8th Dist. Cuyahoga No. 101480, 2015-Ohio-3340, ¶ 29.

{¶22}  The *Henniger* court held that:

> Ohio, like South Dakota in *Neville*, has adopted an implied consent statute, which is outlined in R.C. 4511.191. The consent statute spells out a bargain between drivers and the state. In exchange for the use of the roads within the state of Ohio, drivers consent to have their breath tested if a police officer has reason to believe the driver is intoxicated. Because an OVI suspect is already deemed to have consented to the breath test, "no impermissible coercion is involved when the suspect refuses to submit to take the test."

*Henniger* at ¶ 19, quoting *Neville* at 562. The court also concluded that the State did not directly compel the defendant to refuse the test because the defendant was given a choice between submitting to chemical testing or having his refusal used against him in court. *Id*. at ¶ 20, citing *Neville* at 759.

{¶23}   The *Henniger* court also made clear that refusals to submit to chemical testing are not testimonial for Fifth and Fourteenth Amendment purposes because they are used to demonstrate that the defendant did not perform the physical act of taking the test when prompted. *Id*. at ¶ 15, citing *Deering v. Brown*, 839 F.2d 539, 542 (9th Cir.1988).

{¶24}   Finally, the *Henniger* court explicitly noted that criminalizing refusal does not transform its admission into evidence into a violation of the Fifth Amendment. *Id*. at ¶¶ 14, 22. Specifically, the court held:

> Since Ohio has long accepted the principle that a defendant's refusal may be used
> in considering whether the defendant is under the influence, we see no distinction
> in the use of that same refusal as an element to enhance the minimum term of
> imprisonment. If it is admissible for one, it is equally admissible for the other.

*Id*. at ¶ 21. The Eighth District Court of Appeals reaffirmed its holding in *Henniger* in 2015. *See Benedict*, 2015-Ohio-3340, at ¶ 30 ("We see no need to depart from our holding in *Henniger*.").

{¶25}   While we are not bound by the Eighth District's analysis, we find it persuasive, and hold that R.C. 4511.19(A)(2)'s so-called criminalization of refusal does not violate the Fifth Amendment privilege against self-incrimination. We recognize that a suspect's decision about whether to submit to chemical testing is never "easy or pleasant." *Henniger* at ¶ 20. In addition to the statute at issue, refusal could be used as evidence that the suspect is under the influence. *Id*. at ¶¶ 13, 21. Furthermore, a refusal to submit to chemical testing results in the immediate suspension of the suspect's driving privileges. R.C. 4511.191. Nonetheless, "[i]n Ohio, a license to operate a motor vehicle is a privilege, and not an absolute property right." *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 554 N.E.2d 97 (1990), paragraph two of the syllabus.

**2. R.C. 4511.19(A)(2) and Double Jeopardy**

{¶26} In further support of his first assignment of error, Leasure also contends that R.C. 4511.19(A)(2) violates the Double Jeopardy Clause of the Fifth Amendment. Specifically, Leasure contends that because refusal is "now a crime" for which a sentence may be imposed, using refusal as a basis for an administrative license suspension ("ALS") and for criminal prosecution runs afoul of the Double Jeopardy Clause.

{¶27} "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb,' and this protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution." *State v. Nguyen*, 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, ¶ 24. "This constitutional protection prohibits a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense in a single trial." *Id.*, citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, and *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "This last protection does no more than prevent the sentencing court from proscribing greater punishment than the legislature intended." *Id.*, citing *State v. Miranda,* 138 Ohio St.3d 184, 2014–Ohio–451, 5 N.E.3d 603, ¶ 6.

{¶28} Leasure's double jeopardy argument is fundamentally flawed in that "the refusal to consent to testing is not, itself, a criminal offense." *Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, at ¶ 21. Rather, under R.C. 4511.19(A)(2), refusal to consent to testing "is simply an additional element" that must be proven. *Id*. Moreover, the Ohio Supreme Court has already held that the imposition of an ALS for refusal to take a chemical test does not

preclude, on double jeopardy grounds, use of the refusal as an element to enhance an OVI sentence. *Hoover* at ¶ 25. Specifically, the Court held that:

> An administrative license suspension is an automatic consequence of a refusal to take a chemical test. R.C. 4511.191(B)(1). But imposing an ALS for refusal to take a chemical test does not preclude using the refusal as an element to enhance a DUI sentence. In *Gustafson*, we held that the punishment allowed under Ohio's implied-consent law did not violate the constitutional principle of double jeopardy. 76 Ohio St.3d 425, 668 N.E.2d 435. Both an ALS and a criminal prosecution may result from driving under the influence of drugs or alcohol and refusing to take the chemical test. After a DUI conviction, however, the ALS terminates, and the license suspension becomes part of the DUI sentence. Id. at paragraphs four and five of the syllabus. We recognized in *Gustafson* that both administrative regulation and criminal prosecution play a part in ensuring safety.

*Id*. at ¶ 25.

{¶29} Based upon the Ohio Supreme Court's analysis in *Hoover*, we conclude that R.C. 4511.19(A)(2) does not violate the Double Jeopardy Clause.

{¶30} Having found no merit to Leasure's constitutionality argument, we overrule his first assignment of error.

### B. Admission of Leasure's Prior OVI Conviction

{¶31} In his second assignment of error, Leasure argues that he was denied due process when the trial court admitted evidence of his prior OVI conviction. Specifically, Leasure argues that the admission of his prior OVI conviction was prejudicial because he was being tried for a

similar charge at trial. He contends that the trial court should have accepted his offer to stipulate to the prior conviction to prevent the jury from hearing about it.

{¶32} The admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Green,* 184 Ohio App.3d 406, 2009–Ohio–5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence. *Id.* Generally, an abuse of discretion implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶33} In a case involving an OVI prosecution under R.C. 4511.19(A), the Ohio Supreme Court held that "[w]here the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree thereof, the prior conviction is not an essential element of the subsequent offense, and need not be alleged in the indictment or proved as a matter of fact." *State v. Allen*, 29 Ohio St.3d 53, 506 N.E.2d 199 (1987), syllabus. In addition, the Court stated that the existence of a prior conviction is normally so inflammatory that it should not be revealed to the jury unless otherwise authorized by rule or statute. *Id*. at 55.

{¶34} After the Ohio Supreme Court decided *Allen*, however, the General Assembly enacted R.C. 4511.19(A)(2). As discussed above, R.C. 4511.19(A)(2) made an OVI conviction within 20 years of the current violation an element of the offense. *Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, at ¶ 13. "A person's refusal to take a chemical test is simply *an additional element* that must be proven beyond a reasonable doubt *along with the person's previous DUI conviction* to distinguish the offense from a violation of R.C. 4511.19(A)(1)(a)." (Emphasis added.) *Id*. at ¶ 21.

{¶35} Where the existence of a prior offense is an element of a subsequent crime, the State must prove the prior conviction beyond a reasonable doubt. The trier of fact must find that the previous conviction has been established in order to find the defendant guilty of the second offense. *State v. Day*, 99 Ohio App.3d 514, 517, 651 N.E.2d 52 (12th Dist.1994). "The state must provide sufficient proof necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of an offense. When a previous conviction is an element of an offense, the state must prove the prior offense beyond a reasonable doubt. Neither the state nor the trial court is required to accept a defendant's stipulation as to the existence of the conviction." (Internal citations omitted.) *State v. Smith*, 68 Ohio App.3d 692, 695, 589 N.E.2d 454 (9th Dist.1990). Defendants do not have a right to a stipulation, nor does the State have a duty to accept a stipulation. *State v. McDaniel*, 9th Dist. Lorain No. 05CA008690, 2005-Ohio-5809, ¶ 14.

{¶36} Here, the prior OVI conviction within 20 years is an essential element of the charge under R.C. 4511.19(A)(2). *Hoover* at ¶ 13; *see also State v. Miller*, 12th Dist. Warren No. CA2011-02-013, 2012-Ohio-997, ¶ 12, and *Benedict*, 2015-Ohio-3340, at ¶ 13 (each concluding that a prior OVI conviction within 20 years is an essential element of R.C. 4511.19(A)(2) that the State must prove beyond a reasonable doubt). Thus, the State was required to prove that element beyond a reasonable doubt and the trial court did not err in permitting the State to present evidence of Leasure's prior OVI conviction. Furthermore, based on the case law cited above, the trial court did not err in refusing to accept Leasure's proposed stipulation as to the existence of the prior OVI conviction.

{¶37} Leasure's second assignment of error is overruled.

### C. Bifurcation of the Proceedings

{¶38}   In his third assignment of error, Leasure contends that the trial court erred by failing to bifurcate the proceedings so that the refusal element would be tried to the bench (or stipulated to) while the remaining elements of R.C. 4511.19(A)(2) would be tried separately to the jury.

{¶39}   "It is well settled that the state must prove all essential elements of an offense beyond a reasonable doubt." *Miller*, 2012-Ohio-997, at ¶ 10, citing R.C. 2901.05(A) and *Day,* 99 Ohio App.3d at 517, 651 N.E.2d 52. "It follows, that because the state is required to prove all such elements beyond a reasonable doubt, a defendant is not entitled to bifurcate proceedings or waive a jury trial on one element alone." *Id*., citing *State v. Adams,* 106 Ohio App.3d 139, 142–144, 665 N.E.2d 700 (10th Dist.1995).

{¶40}   As discussed above, refusal is required to be proven beyond a reasonable doubt in order for the State to obtain a conviction under R.C. 4511.19(A)(2). In other words, it is an essential element. Consequently, a court may not preclude the State from presenting evidence of refusal as such evidence is not only proper, but required. *Id*. at ¶ 12, citing *State v. Holland,* 5th Dist. Stark No. 2011 CA 00104, 2012–Ohio–486, ¶¶ 18–21. Based on the foregoing, we conclude that the trial court did not err by refusing to bifurcate the proceedings.

{¶41}   Leasure's third assignment of error is overruled.

### D. Scope of Cross-Examination

{¶42}   In his fourth assignment of error, Leasure contends that the trial court erred by prohibiting him from conducting a full cross-examination of Sergeant Ward regarding the difference between an OVI offense and the offense of physical control.

{¶43}   On appeal, as he did at the trial level, Leasure argues that he should have been charged for violating R.C. 4511.194, "Physical control of vehicle while under the influence,"

rather than for violating the charged OVI offense. Leasure notes that R.C. 4511.194 prohibits being in the driver's seat of a vehicle and having possession of the ignition key or other ignition device, see e.g., R.C. 4511.194(A)(2) and (B); while to "operate" a vehicle as required in violating R.C. 4511.19, "means to cause or have caused movement of a vehicle * * * [.]" R.C. 4511.01(HHH). Leasure's theory of the case is that the State failed to prove that he had "caused" the vehicle he was found in to move while he was intoxicated.

{¶44}   A party, on cross-examination, may inquire into all matters pertinent to the case that the party calling the witness would have been entitled or required to raise. *In re Fugate*, 2d Dist. Darke No. 1512, 2000 WL 1370329, *3 (Sept. 22, 2000), citing *Smith v. State*, 125 Ohio St. 137, 180 N.E. 695 (1932), paragraph one of the syllabus. The trial court, however, has broad discretion in imposing limits on the scope of cross-examination. *Id*., citing *State v. Cobb*, 81 Ohio App.3d 179, 183, 610 N.E.2d 1009 (9th Dist.1991). Trial judges have wide latitude "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). An appellate court will not interfere with a trial court's decision regarding the scope of cross-examination absent an abuse of discretion. *State v. Handa*, 4th Dist. Athens No. 07CA26, 2008-Ohio-3754, ¶ 19.

{¶45}   Here, Leasure was allowed to ask Sergeant Ward about the offense of having physical control of a vehicle while under the influence. Specifically, Leasure's trial counsel was permitted to question Sergeant Ward about the elements of physical control, and Sergeant Ward so testified. The objection that was sustained by the trial court, under the basis that it called for a legal conclusion, was when Leasure's trial counsel asked Sergeant Ward to differentiate between

the offense of physical control and an OVI offense. In response to the objection, Leasure's trial counsel admitted that the inquiry called for a legal conclusion.

{¶46} "A police officer is not qualified to testify on legal questions * * *." *State v. Ghaster*, 8th Dist. Cuyahoga No. 90838, 2009-Ohio-2117, ¶ 32; *see also* Evid.R. 701. Thus, the trial court did not abuse its discretion in cutting short Leasure's cross-examination on this point. Permitting the officer to answer the question would have only served to confuse the jury on an issue that was irrelevant to the charge that was actually filed against Leasure.

{¶47} Leasure's fourth assignment of error is overruled.

### E. Failure to Give Jury Instruction

{¶48} In his fifth assignment of error, Leasure contends that the trial court erred when it denied his request for a jury instruction on "mischarge". In essence, Leasure argues that the trial court should have read his proffered instruction on having physical control while under the influence as an alternative to OVI because there was no direct evidence that he was impaired at the time he operated the vehicle.

{¶49} A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton,* 4th Dist. Scioto No. 09CA3330, 2011–Ohio–2783, ¶ 69. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " *Hamilton* at ¶ 69, quoting *State v. Lessin,* 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial

court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Ellis*, 5th Dist. Fairfield No. 02 CA 96, 2004-Ohio-610, ¶ 19.

{¶50}  At the outset, we note that the State " 'has great discretion in deciding which charges should be filed and may decide, for a myriad of reasons, not to prosecute on certain charges notwithstanding that sufficient evidence exists to support a conviction.' " *State v. Conklin*, 12th Dist. Butler No. CA94-03-064, 1995 WL 128388, *3 (Mar. 27, 1995), quoting *State ex rel. Tipton v. Schisler*, 4th Dist. Scioto No. 90CA1926, 1991 WL 192733, *3 (Sept. 24, 1991). Moreover, "[t]he mere fact that appellant's conduct violates more than one statute does not force the state to prosecute him under the lesser statute." *State v. Cooper*, 66 Ohio App.3d 551, 553, 585 N.E.2d 868 (4th Dist.1990); *see also State v. Spearman*, 6th Dist. Lucas No. L-01-1373, 2004-Ohio-1641, ¶ 37, and *State v. Jackson*, 10th Dist. Franklin No. 96APA04-504, 1996 WL 684135, *4 (Nov. 26, 1996).

{¶51}  More importantly, a trial court's refusal to instruct the jury on an offense that is not a charged offense, is proper. *See State v. Branden*, 2d Dist. Montgomery No. 12918, 1992 WL 337613, *4 (Nov. 16, 1992) (finding trial court properly denied requested jury instruction on negligent homicide where negligent homicide was neither a charged offense nor a lesser included offense of voluntary manslaughter (the actual charged offense)). " 'Excepting lesser included offenses and allied offenses, there is no reason to exonerate [a defendant] of one crime because he simultaneously committed another.' " *Conklin* at *3, quoting *State v. Williams*, 89 Ohio App.3d 288, 293, 624 N.E.2d 259 (10th Dist.1993). Here, Leasure was charged with OVI, not physical control. And Leasure does not contend that physical control is a lesser included offense

of OVI. Thus, the trial did not abuse its discretion in refusing to instruct the jury on mischarge or the offense of physical control.

{¶52}  Furthermore, even if we were to assume, *arguendo*, that the jury instruction should have been given, we nonetheless conclude that the failure to instruct the jury was not prejudicial. Leasure's trial counsel did address the charge of physical control on multiple occasions during trial. He stated during opening argument that:

> * * * Ohio has made certain acts, certain facts, crimes. All we're asking for is that the crime that's charged fits the facts of the case. In this case the State has to prove that my client was impaired at the time he operated the motor vehicle. The State wants you to take his condition three and half hours later and say it's the same condition he was when he operated it. * * * And so why don't you charge this man with the proper crime. Cause there is, there is a crime called physical control. It says if you're impaired * * * you cannot be behind a vehicle. * * * Here's the problem with the State's case. They can't prove what my client looked like, smelled like, acted like, three and a half hours before. They just can't do it because he was there and they can't do it and they have to make it fit. Number two. In order to be guilty of OVI, the car has to be operable. What does that mean? It has to be capable of movement. If at the time of impairment the car could not be moved, he cannot be guilty of OVI[,] maybe those other offense but not OVI. * * * And if you understand that movement is a requirement of this car, then how do you charge him with OVI with a term of operate. It doesn't fit. You've picked the wrong charge. It's proof that my client's not guilty of this crime as charged. That's where we are. Thank you.

{¶53}  Furthermore, during closing arguments, counsel further argued, "What he [Sergeant Ward] didn't tell you was he says I could have chosen physical control. * * *That's not the same as OVI. There's something else out there in the world that you have to deal with. And so what we have here is he chose to ignore the inoperability of this and choose (sic.) the higher offense. * * * [I]f we had the proper charge in this case we probably wouldn't be here."

{¶54}   Thus, Leasure's trial counsel was attempting to convince the jury that Leasure was charged with the wrong offense and should be acquitted of OVI. The matter of "mischarge" was argued to the jury, and consequently, the trial court's refusal to so instruct the jury did not result in prejudice.

{¶55}  In sum, the trial court's refusal to instruct the jury on mischarge and the offense of physical control was not an abuse of its discretion because Leasure was never charged with physical control. Even if we were to assume that the failure to give the instruction was in error, it did not result in prejudice because trial counsel effectively raised the issue in his opening and closing statements. Accordingly, Leasure's fifth assignment of error is overruled.

## IV. Conclusion

{¶56}  Leasure has not persuaded us that R.C. 4511.19(A)(2) is unconstitutional, or that the trial court otherwise erred in conducting his trial. Having overruled all of his assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

Harsha, J., dissenting:

{¶ 57} I respectfully dissent because I conclude Leasure's refusal was compelled and becomes testimonial in this context. Therefore, it is protected by the Fifth Amendment.

{¶ 58} Although the refusal is not ipso facto a crime, it clearly is one of the elements of R.C. 4511.19(A)(2). See *Hoover, supra*, at ¶ 21. As the federal circuit court proclaimed over two centuries ago, "many links (i.e. elements) frequently compose the chain of testimony which is necessary to convict any individual of a crime(.) * * * no witness is compellable to furnish any one of them against himself." *U.S. v. Burr* (1807), 25 F. Cas. 38 (No. 14693). Nothing in the passage of 200 plus years of jurisprudence has invalidated that pronouncement. Yet that is exactly what the state attempts to do here.

{¶ 59} The majority relies on a series of cases dealing largely with Miranda issues to conclude that if it's okay to use a refusal as circumstantial evidence of guilt in the context of simple OVI charges, it's permissible to use a refusal as proof of an element of a crime in R.C. 4511.19(A)(2). They rely in part upon the distinction between physical or "real" evidence (permitted) and communication (precluded) to conclude that the refusal is not testimonial, i.e. communication. In the present context a refusal is more than just a negative response to a request to perform a physical act. See *Pennsylvania v. Muniz* (1990), 496 U.S. 582. Rather the refusal is a disclosure of a fact that serves as incriminating evidence under a prosecution for violating R.C. 4511.19(A)(2). Thus, it has to be testimonial in this context.

{¶ 60} Likewise, the majority concludes the refusal was not compelled because Leasure had a choice, "albeit a difficult one." The majority sees the implied consent law as a bargain that sanctions the choice between two equivalent options: take the test or refuse it. However, the "difficult choices" referred to in *Neville*, 459 U.S. at 564 (evidence of a refusal was deemed

admissible as circumstantial evidence of impairment) are now transmuted into a catch-22 by

R.C. 4511.19(A)(2). In other words, submit to the breathalyzer, which could establish an OVI

violation, or have the exercise of his right to refuse the test become evidence of the violation of

another statute. See *Deering v. Brown* (1988), 839 Fed. 539, 546, 547 (Ferguson, dissenting).

What could be more inherently coercive that putting the defendant in the dilemma of choosing

between providing circumstantial evidence of violating one law, or direct evidence of violating

another? *Id.*

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Dissents with Dissenting Opinion.

For the Court

BY: _____
　　　Marie Hoover
　　　Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**